1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRYCE MEYER, individually and as the representative of all persons similarly situated; | Case No.:  3:14-CV-05305-RBL |
| Plaintiff, | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | **Noting Date: February 6, 2015** |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, foreign insurers; | ***ORAL ARGUMENT REQUESTED*** |
| Defendants. | |

## I. MOTION/RELIEF REQUESTED

COMES NOW BRYCE MEYER, individually and as the representative of all persons similarly situated, and through his counsel moves the Court pursuant to FRCP 23 for certification of the above-entitled matter as a class action on behalf of the following class members:

All American Family insureds with Washington policies issued in Washington State, where the insured's vehicle damages were covered under the UIM PD coverage, and

1. the repair estimates on the vehicle (including any supplements) totaled

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 1

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

at least $1,000;

2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and

3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Excluded from the Class are a) claims involving leased vehicles or total losses, b) the assigned judge, the judge's staff and family, and c) accidents occurring before March 6, 2008.

## II. EVIDENCE RELIED UPON

1.      Declaration of STEPHEN M. HANSEN with attachments.

## III.  INTRODUCTION

Like prior "diminished value" (or "DV") cases that have been certified, and then settled, in Washington State, this litigation presents a series of common class wide questions. However, unlike some prior cases which involved multiple states, there are no choice of law issues.   This case is governed by Washington Law, and the Washington Supreme Court in *Moeller vs. Farmers Ins. Co. of Wa.*, 173 Wn.2d 264, 267 P.3d 998 (2011) which authoritatively answered many of the legal issues presented in past cases.

Moreover, because American Family ("AmFam") concedes coverage, and AmFam has a well established and computerized process to determine the amount of loss, this case does not raise the coverage questions presented in some prior cases.  Instead, the questions on the merits will likely involve determining the loss for those who were not paid DV (because AmFam never discloses the existence of coverage, nor adjusts the loss unless its insureds knew enough to demand DV be paid), determining if the method used by AmFam or the proposed regression analysis prepared by Plaintiff's expert Dr. Bernard A. Siskin best reflects the actual DV of members of the proposed Class, and determining if AmFam's policies and practices in addressing DV (or more often not addressing it) violate the Washington Administrative Code Provisions on Claims Handling.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 2

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

As in prior cases, given the existence of a common series of practices by AmFam, and the presence of common evidence, these questions are best addressed via Class Certification.

## IV. STATEMENT OF FACTS

A.     *The Proposed Class*.

Plaintiff seeks certification of the following Class:

All American Family insureds with Washington policies issued in Washington State, where the insured's vehicle damages were covered under the UIM PD coverage, and
1. the repair estimates on the vehicle (including any supplements) totaled at least $1,000;
2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Excluded from the Class are a) claims involving leased vehicles or total losses, b) the assigned judge, the judge's staff and family, and c) accidents occurring before March 6, 2008.

This Washington only Class is the most recent in a series of "diminished value" or "DV" cases to come before Courts in Washington on a motion for class certification.  The Washington Appellate Courts have repeatedly rejected the arguments advanced by insurance carriers regarding the supposed impossibility of Class Certification in these cases.   Review was rejected by the Washington Supreme Court in *Busani v. USAA*.  In *Laughlin v. Allstate*, the Court of Appeals affirmed Class Certification in an unpublished order.  *Laughlin v. Allstate*, No. 31612-9-II (Wa. App. 11/8/2005).[1]   In *Moeller v. Farmers Ins. Co. of Wa*, the Washington Court of Appeals affirmed the certification decision.  *Moeller v. Farmers Ins. Co. of Wa*, 155 Wn.App. 133, 229 P.3d 857 (2010).  That decision was thereafter affirmed by the Washington Supreme

---

[1] These Orders are attached as **Exh. 1 and 2** to the 12/15/14 Declaration of Stephen M. Hansen ISO Class Certification ("*Hansen Decl*")

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 3

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

Court.  *Moeller vs. Farmers Ins. Co. of Wa.*, 173 Wn.2d 264, 267 P.3d 998 (2011).

After certification of the Class against Farmers in *Moeller v. Farmers*[2] was affirmed in December, 2011, that case was prepared for a class-wide trial and was then resolved a month before trial, with final approval of the settlement in December, 2013.  This settlement occurred after a number of Farmers' defenses (claims AmFam will likely repeat in this case) were rejected on summary judgment by Judge Vicki A. Hogan.[3]   Judge Hogan further ruled that Plaintiffs' damage model developed by Dr. Bernard A. Siskin was admissible, and could be used to show class-wide injury and damages, and then for the distribution of any class wide recovery post judgment.[4]

Most recently, post remand in *Moeller*, Judge Susan K. Serko also certified a diminished value class action on March 27, 2014 (*Mansker v. Farmers*, no. 11-2-0668-7).  *Mansker* involves certain insureds with Uninsured Motorist Property Damage ("UIM PD") claims from 2004 to the present.  In certifying the *Mansker* Class, Judge Serko rejected arguments that *Moeller* was somehow no longer good law, and that the legal landscape has somehow changed since the Washington Supreme Court's December 21, 2011 decision.[5]

Each prior case, including *Moeller* and *Mansker,* involved the type of loss on first party auto physical damage claims called "diminished value."  Plaintiffs allege diminished value occurs when relatively new vehicles (those less than 6 years old, and with less than 90,000 miles

---

[2] *Moeller,* like this case, was a Washington only Class, and involved the same experts as are offered in this case to prove the feasibility of class-wide proof of liability and damages.

[3] Judge Hogan ruled based upon the admissions of Farmers own employees and experts, that there was no disputed issues of fact, and that vehicles within the Class definition in this case could not be, and were not, restored to pre-loss condition.  As such any diminished value suffered on the losses was a non-stigma loss, and therefore recoverable under the Farmers' policy at issue in both this case.  Judge Hogan's ruling is attached as **Exh. 3** to the *Hansen Decl.* (7/2/13 *Moeller v. Farmers* Tr. at 60-93).

[4] Judge Hogan's ruling is attached as **Exh. 4** to the *Hansen Decl.*

[5] Judge Serko's Order ("3/27/14 *Mansker* Cert. Order") is attached as **Exh. 5** to the *Hansen Decl.*

at the time of loss) suffer accident damage which requires paint, body, and/or frame/structural repair.  Repair of these types of damage, even to industry standards in auto-body collision repair – as Judge Hogan found in *Moeller v. Farmers* based upon Farmers' own admissions - leaves tangible differences as the vehicle cannot be *fully* restored to its pre-loss condition.   The presence of these *tangible and identifiable* differences, irrespective of repair, reduces the vehicle's fair market value.

B.     *AmFam's Common Diminished Value Practices.*

American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin (collectively "AmFam") sell UIM PD coverage in Washington.  Since January 2006 – well before the proposed Class period, which begins March 6, 2008 - the AmFam UIM PD policy language at issue has been identical.[6]  That language reads:  "[We] will pay compensatory damages an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of …property damage caused by an accident."[7]

AmFam admits that "diminished value" is covered under this language, and does not contest coverage.[8]   Nor could AmFam reasonably contest coverage given its policy language, the applicable Jury Instruction WPI 30.12 ("The reasonable value of necessary repairs to any

---

[6] See 11/6/14 Deposition of Wade A. Nielson at 57:14 to 57:24   (Attached as **Exh 6** to the *Hansen Decl.*)

[7] Policy Form END 55 (WA) Ed. 1/06 at PolicyM0024 (**Exh 7** to *Hansen Decl.*)

[8] *11/6/14 Deposition of Wade A. Nielson* at 43:2 to 43:22 ("A: Well, it's not really a matter of -- it's not that we wouldn't find it to be covered…It's that we potentially might not find that diminished value exists for that particular loss."); *accord* 11/4/14 Deposition of Matthew L. Fuqua at 59:2 to 59:13 (admitting he found DV coverage for proposed Class representative Mr. Meyer: "[H]e has coverage for property damage.  And in this case, after evaluating, I determined there was a loss of value that, in my opinion, was considered some property damage.") and 60:7 to 60:21 (" [A]nd after it was evaluated, it was determined it did go down in  value, which does fit the definition, which does, in my opinion, qualify as property damage.") attached as **Exh 8** to the *Hansen Decl*.

property that was damaged plus the difference between the fair cash market value of the property immediately before the occurrence and its fair cash market value after it is repaired."), and the ruling of the Washington Supreme Court in *Moeller v. Farmers Insurance Company of Washington*, 73 Wn.2d 264, 267 P.3d 998 (2011) that an insurer owes the same coverage (to the full value of the vehicle) irrespective of whether the vehicle is repaired, replaced, or totaled.

Not only does AmFam acknowledge coverage, but it in fact has a process to calculate and pay DV: Using an automated and computerized diminished value program called "Autosource," AmFam sets a maximum loss of 10% of the vehicle's pre-loss retail value as the maximum DV, and the program then discounts from this number based upon the severity of the repaired damage (vehicles with major frame/structural damage get no discount) and the presence of any prior unrepaired damage. The Autosource diminished value computer tool then pulls the remainder of information used to determine diminished value (such as mileage) automatically from the repair invoice created when the vehicle is estimated and provides a loss in market value for "diminished value." It costs AmFam nothing extra to run the DV assessment.[9]

AmFam's insured's vehicles are not re-inspected after they are repaired, nor are they inspected at all to determine diminished value.[10]  If no additional claim of damages for improper repairs (called  by some "repair related diminished value") is being made, and the repairs are assumed to have been "properly done, done to industry standards" then there is no need to look further at the vehicle, the repair estimate (and any photos) allows DV to be determined.[11]  As the

---

[9] 9/10/14 Deposition of Lisa McNally at 138:14 to 138:21, attached as **Exh 9** to the *Hansen Decl*.

[10] 11/6/14 Deposition of Wade A. Nielson. at 25:3 to 25:16, 16:14 to 16:18, 47:21 to 48:11, and 26:7 to 26:13.  See also Hansen **Decl. Exh. 10** (Exhibit 3 to Nielson Deposition [Example of Autosource] Loss of Value analysis print out]) and **Exh. 11** (Exhibit 7 to Nielson Deposition [AmFam "Autosource DV Workflow Quick Reference Guide" showing how deductions from 10% are calculated]

[11] 11/6/14 Deposition of Wade A. Nielson at 52:4 to 52:11; *accord* 11/4/14 Deposition of Matthew L. Fuqua at 40:24 to 41:24 (Modifiers selected by looking at the estimate, not inspecting the vehicle; "Q   You can run this Autosource

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

AmFam Autosource instructions states: "[T]he normal diminish value process would also include a repair estimate and photos in addition to running the diminished value report.  This diminished value report provides the diminished value of the loss vehicle."[12]

AmFam in fact has a claims practice that mirrors in many respects the proposed Class in this case.  AmFam believes DV may not exist on some vehicles over seven years old (here the Class cuts off at six years).[13]  AmFam believes that damage to the vehicle's structural and/or frame system makes DV possible, and does not know how any repair will hold up in a subsequent accident.[14]  Yet, AmFam (as does the Class in this case) does not expect to see DV on vehicles that only have repairs to bolt-on/bolt-off parts (such as chrome bumpers, lights, etc.) where body and paint work is not required on the repair.[15]  Not surprisingly AmFam believes (as Plaintiff's proposed damage model shows) that the more extensive the repaired damage to a vehicle is, the more DV loss is likely to occur.[16]  AmFam in fact will have run an Autosource DV appraisal on any UIM DV claim with over $1,000.00 in damage (the Class cut off)![17]

As AmFam acknowledges (and Plaintiff's proposed damage model assumes) DV is determined as of the time of the accident, and later events (such as a subsequent accident) do not

---

diminished value report without ever looking at the vehicle? A   Without looking at it in person, yes.  Q   Yes.  And, in fact, you've done that number of times; right?  A   Correct."); 9/10/14 Deposition of Lisa McNally at 40:3 to 40:12 (any repair quality issues not considered as part of determining DV).

[12] Hansen Decl., **Exh. 12** at AmFam MM1704

[13] 11/6/14 Deposition of Wade A. Nielson at 26:14 to 27:7

[14] Id. at 31:2 to 32:11.

[15] Id. at 77:22 to 78:6

[16] Id. at 36:1 to 36:12; accord 11/4/14 Deposition of Matthew L. Fuqua at 51:10 to 51:23 ("I do take into consideration the severity."

[17] 9/10/14 Deposition of Lisa McNally at 55:10 to 55:17

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 7

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

take away the obligation to pay for DV on the earlier loss.[18]   Finally, there is no need for the loss to be "realized" for it to be paid.[19]

   C.  *AmFam's Efforts to Avoid Paying the Full Loss.*

  This picture, however, is not as rosy for AmFam insureds as the above would suggest. First, while AmFam *could* determine DV as a matter of course, it does not.  AmFam does not disclose that there is coverage for diminished value, and only runs the Autosource tool (which costs AmFam nothing to run) to determine the amount of diminished value when *its insured* raises diminished value.   As such, the vast majority of AmFam insureds with UIM PD claims never received any claims handling for DV from AmFam, nor any payment for their legally recoverable damages.[20]   AmFam fails to disclose despite knowing that the Washington Administrative Code (WAC) requires it to disclose what "damage claim[s] that would be collectable under that coverage" when an insured has damages from a UM accident.[21]

  Second, for the few AmFam insureds (like the Plaintiff in this case) knowledgeable enough to even mention DV, AmFam sends a standard letter which demands substantial information from the insured.[22]   Yet the information this form letter demands – things like notarization of documents, and the original sales papers on the vehicle – are irrelevant to AmFam's actual determination of DV damages or is information AmFam already has in its

---

[18] *Id*. at 40:1 to 41:5; accord 9/10/14 Deposition of Lisa McNally at 45:22 to 45:24, 45:25 to 46:15

[19] 9/10/14 Deposition of Lisa McNally at 45:16 to 45:21 (Q   Does your policy require a lost to be realized in order for a loss to be paid?  .... A   No.")

[20] 11/6/14 Deposition of Wade A. Nielson at 10:25 to 11:5, 16:7 to 16:13, 14:6 to 14:22.

[21] 11/6/14 Deposition of Wade A. Nielson at 11:6 to 11:21, 13:4 to 14:2; 9/10/14 Deposition of Lisa McNally at 122:1 to 122:5

[22] 11/6/14 Deposition of Wade A. Nielson at 73:23 to 74:13

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 8

files.[23]

Third, while AmFam uses the Autosource system (capped by AmFam at a loss of 10% of the vehicle's retail NADA value), AmFam has no evidence that the Autosource tool provides fair or reasonable valuations of loss.[24]  AmFam likewise has no information that suggests the 10% cap it set is accurate or reflects the actual DV.[25]

AmFam's DV avoidance policies breach its common contract obligations and violate its contractual duty of good faith and fair dealing (as codified in the WAC) to Plaintiff and Class members.  When an AmFam insured reports a UM claim for property loss, AmFam undertakes the duty to adjust the claim and appraise the damages sustained by the vehicle.  However, instead of fulfilling its contractual and legal obligations, AmFam tries to minimize its exposure to DV payments.  AmFam unfairly burdens the insured to learn about, pursue and prove DV losses independently.

      D.     *Common evidence can be presented that DV Exists in Vehicles That Have Been Damaged and Properly Repaired.*

Intuitively, a vehicle that has been damaged and subsequently repaired will command a lower re-sale price than the same vehicle which has not suffered damage.  Plaintiff will demonstrate, however, that this is more than simple intuition, and that there are uniform, objective, and tangible reasons which justify the decrease in value.  Professor Kristin Wood, Ph.D., a mechanical engineer with extensive experience involving the issues in this case avers that for vehicles that fall within the proposed Class:

"within a reasonable degree of engineering certainty, there exist qualitative

---

[23] 9/10/14 Deposition of Lisa McNally at 81:17 to 82:4

[24] 11/6/14 Deposition of Wade A. Nielson at 52:20 to 53:20

[25] 11/4/14 Deposition of Matthew L. Fuqua at 40:8 to 40:18

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 9

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

differences in a vehicle after an accident and subsequent repair, compared to the pre-accident condition of the vehicle. These differences are a result of the loosening of parts (causing vibration, rattles, and other anomalies), changes in metal material properties, and undetectable (in the sense of it being impractical and infeasible to detect in collision repair) related secondary damage that results in collisions."[26]

As Dr. Wood will further testify the differences "are not a result of improper repair practices; it is infeasible from a practical standpoint, to validate the state of each and every component of a vehicle during its repair." *Wood Decl.* at ¶21. Limitations in the repair process "prevent any assurance that vehicles will perform in the same manner during a second accident" and, in fact, there exists "a significant likelihood the repaired structural members on a vehicle will not provide the same structural integrity and energy transmittance as the original members" in a later crash. *Id.* at ¶ 22-23. These physical differences result in DV losses.

Similar testimony can be presented from witnesses like Plaintiff's body shop, estimating, and appraisal expert, Mike Harber. Mr. Harber has over 25 years of experience in auto body repair, auto physical damage adjusting, and appraising vehicles.[27]   As Mr. Harber will testify, diminished value loss:

"flows from the fact that when certain vehicles (those that are newer and have less mileage) have certain types of damage (frame/structure and paint/body) those damages can be seen and identified even after repair. As such a repair shop can't fully restore these type of vehicles to their pre-loss condition. Instead, market demand and market value goes down for that vehicle even if a repair shop does the best possible job fixing it."

*Harber Decl.* at ¶6. As Mr. Harber explains, given his extensive experience, the repair processes used in collision repair, due to both technological differences and economic limits on the

---

[26] 12/15/14 Declaration of Kristin L. Wood, Ph.D at ¶20 ("*Wood Decl.*"), attached as **Exh. 13** to the *Hansen Decl.*

[27] 12/15/14 Declaration of Derrell M. Harber at ¶ 1-4 ("*Harber Decl.*"). Attached as **Exh 14** to the *Hansen Decl.*

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

techniques used, result in vehicles which are identifiably and objectively different, and inferior to pre-loss condition.  *Id.* at ¶ 8-10.  As Mr. Harber notes, for vehicles within the Class definition, and on the proposed Class Representative's car, the extent and presence of collision body and paint repair is easily detectible and would be visually apparent to a knowledgeable buyer, reducing the vehicle's value.  *Id.* at ¶ 11-13.  Mr. Harber can show when this matter proceeds to the the merits that:

> [A]ll vehicle that fall within the proposed Class, are tangibly and identifiably different than they were in their pre-accident condition.  Moreover, vehicles that fall within the Class will all have damage repair which can be, and is, identified by knowledgeable buyers and sellers, and as such will have diminished value.

*Id.* at ¶ 15.

The expansive evidence gathered in *Moeller v. Farmers* – the only case to get close to trial in this State – showed that vehicles within the Class could not be fully restored to pre-loss condition, much of which came from Farmers own employees with experience in collision repair who did not contest this fact.  After extensive briefing and argument, Judge Hogan granted partial summary judgment for the Class finding that there was *no evidence* that vehicles in the Class were repaired fully to pre-loss condition, and as such the loss was not excluded by the policy.[28]  With AmFam having admitted that it has no idea how a vehicle will perform in a later accident after repair or if it has been repaired to pre-loss condition[29] and having admitted that it does not require repairs be to pre-loss condition,[30] it is not surprising that even its own corporate witnesses would take an undamaged car over one within the Class that has repaired accident

---

[28] 7/2/13 Moeller v. Farmers Tr. at 60-93.  Attached as **Exh. 15** to the *Hansen Decl.*

[29] 11/6/14 Deposition of Wade A. Nielson at 32:2 to 32:11, 32:16 to 33:6, 64:18 to 65:11

[30] 11/6/14 Deposition of Wade A. Nielson at 63:23 to 64:2,

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 11

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

damage.[31]

## V. ARGUMENT

A.   *Rule 23 Requirements*

The Court must conduct a "rigorous analysis" to determine whether Plaintiff's claims are suitable for class certification.  *Roshandel v. Chertoff*, 554 F.Supp.2d 1194, 1203 (W.D.Wash. 2008).  In doing so, "the court is not at liberty to consider whether the moving party has stated a cause of action or is likely to prevail on the merits."  *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 571 (W.D. Wash. 2007) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)).[32]  This case meets all the requirements of Rule 23(a) and 23(b)(3).  Certification is therefore appropriate.

B.   *The Proposed Class Definition*

"A sufficiently definite class exists if its class members are ascertainable and clearly identifiable."  *Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2008 WL 4530525, at *3 (E.D.Wash. Oct. 6, 2008).  Here, As AmFam witnesses have testified, the information necessary to identify Class Members is available from AmFam's computerized estimates and records of policyholders.[33]  The proposed Class definition is "sufficiently definite" as the members of the

---

[31] 11/6/14 Deposition of Wade A. Nielson at 33:8 to 33:20 ("To be honest with you, I'd take the one that was undamaged."); 11/4/14 Deposition of Matthew L. Fuqua at 64:8 to 65:8

[32] *See also Yapuna v. Global Horizons Manpower Inc.*, 254 F.R.D. 407, 414 (E.D. Wash. 2008) ("the narrow question" is whether a class action is a proper vehicle for litigating the claims brought by Plaintiffs on behalf of the absent class members.").

[33] 11/6/14 Deposition of Wade A. Nielson at 67- 71  (AmFam has total amount of damage, most current addresses, can remove leased, non-owned, total loss, and glass only vehicles, and can determine if vehicle has structural/frame and/or body and paint damage that required repair, as well as determine the vehicle age and mileage at time of accident) and  71:6 to 71:9 ("the way that you would determine if a vehicle has a prior accident would be by running that vehicle in the ISO system? A   Correct."); 11/4/14 Deposition of Matthew L. Fuqua at 72-76; 74:14 to 74:20, 81:14 to 81:19, 88:16 to 89:5 (AmFam has information on vehicle at time of accident, including mileage and any prior accidents, as well as if vehicle is a total loss).

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 12

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

Class can be identified by examining AmFam's records. *Sandoval,* 2008 WL 4530525, at *3 (identification of "class membership by examining the employee payroll and other records maintained by Defendants" was a "reasonable, objective method");

### C. The Requirements Of Rule 23(a) Are Readily Met

Rule 23(a) sets forth four prerequisites for certification – numerosity, commonality, typicality and adequacy of representation. *Roshandel,* 554 F.Supp.2d at 1203. Each is satisfied here:

### 1.    Numerosity is Satisfied

Numerosity exists if the class is so numerous that joinder of all members is "impracticable," meaning difficult or inconvenient, it need not be impossible. Rule 23(a)(1); *Rodriguez v. Carlson,* 166 F.R.D. 465, 471 (E.D. Wash. 1996). Courts are entitled to rely on "common sense assumption[s]" and "reasonable estimate[s]" to support a finding of numerosity. *See In re Badger Mountain Irrigation Dist. Sec. Litig.,* 143 F.R.D. 693, 696 (W.D. Wash. 1992); *Vickery v. Jones,* 856 F.Supp. 1313, 1328 (S.D. Ill. 1994). "As a general rule, classes exceeding forty-one (41) individuals satisfy the numerosity requirement." *Sandoval,* 2008 WL 4530525, at *3. Here, because (by Plaintiff's estimate) there are around 3,500 putative class memebers, the proposed Classes are sufficiently numerous. (See First Amended Complaint, (Document 19) at p. 11, para 5.5).

As in *Moeller,* Plaintiff has hired a statistician to determine class-wide Class Member's damages and how to then distribute those damages if a recovery is made. That statistician, Dr. Bernard A. Siskin, has also looked at the issue of "ascertainability." As he notes in his Declaration in this case, as in prior cases, a class list can be generated, and using statistical sampling of Class Claims a damage model can be created, with a formula that can then be applied

on a claim by claim basis in a distribution phase.[34]

In any event, while it can be done in this case, class certification does not require that every individual that could possibly fall into the Class be capable of identification.  *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986).  Even if the review required to conclusively identify members of the Class needs to be done claim by claim, that fact still would not defeat the ascertainability.  *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("Even if MetLife is unable to run the database on the older statistical information, the class can be identified through an examination of the individual files of each of the participants.  The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement.")

   2.   *Commonality is Satisfied*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *See* Rule 23(a)(2); *see also Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2006 WL 2571984, at *6 (W.D. Wash. Sept. 5, 2006) (citations omitted).  But all questions of fact and law need not be common; "a single common issue is sufficient to meet the commonality requirement." *See Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *3 (W.D.Wash. Aug. 16, 2006); *see also Roshandel,* 554 F.Supp.2d at 1203 (citations omitted); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir.1996).

The commonality test "is qualitative rather than quantitative…." *In re Am. Med. Sys.,* 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3–50 (3d ed.1992)); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158, 174 (E.D.Pa.1997) ("[A] common question need only *exist,* not predominate, for the [commonality] requirement to be satisfied.")

---

[34] 12/15/14 Declaration of Dr. Bernard A. Siskin at ¶8.  Attached as **Exh 16** to the *Hansen Decl*.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 14

As detailed above through the testimony AmFam' 30(b)(6) and employees, the claims handling practices that Plaintiff challenges are uniformly implemented.  AmFam applies its diminished value policies (which can perhaps best be characterized as diminished value avoidance policies) of: (1) non-disclosure and (2) not adjusting the loss to include diminished value company-wide to prevent insureds from discovering their right to DV damages, and its claims personnel from mentioning or paying for, DV losses.  AmFam's practices adversely affected the Plaintiff and all Class Members in the same way – by not being told about diminished value (and then if they knew enough to press the claim) by having AmFam's offer being made using a system with no evidence to support its validity.  Then for those few individuals who know enough to raise the issue[35], AmFam has a consistent method to handle the claim, the appropriateness of which is a common issue.

The Washington Court of Appeals' decision in *Moeller*, 155 Wn.App. 133, where common issues of law and fact were found to exist, is directly on point.[36]  The common issues of law and fact found in *Moeller* to justify certification included "whether the Class Members' policies covered diminished value;" "whether each class member's vehicle suffered reduction in value as a result of the vehicle having been in an accident without consideration of repair related diminished value;" "whether each class member's vehicle could be returned to pre-accident condition;" and, whether the insurer "engaged in a common and systematic course of conduct designed to process physical damage claims so as to avoid acknowledging or paying DV claims." *Id*. at 149.  Each of these common issues justifies certification in this case.

---

[35] AmFam has run 244 DV assessments – many, if not most of which were on liability claims, and only part of which were for UM PD claims – since 2010.   11/6/14 Deposition of Wade A. Nielson  at 72:14-24

[36] Farmers conceded, and did not raise further, any of the CR23(a) issues on appeal to the Washington Supreme Court.  *Moeller*, 267 P.3d at 1005

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 15

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

*3.        Typicality is Satisfied*

Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims or defenses of the Class.  Typicality does not require that Plaintiff's claims are "substantially identical" to other Class Members but simply arise from the "same event or practice or course of conduct" as the claims of other Class Members and be based on the "same legal or remedial theory."  Rule 23(a)(3); *Sandoval*, 2008 WL4530525, at *4.  Here, Plaintiff is typical because, like other Class members, he purchased an AmFam policy with UM coverage, paid his premiums, and made a claim for loss.  (*First Amended Complaint* (Document 19) at p. 11 para. 5.6).  AmFam accepted coverage, inspected the vehicle and assessed the damages, but failed to notify him of his DV loss coverage.  When Mr. Meyer's knew enough to request DV, he was subjected to the same claims handling process that would play out for any other member of the proposed Class.  AmFam ran the Autosource program, and was then offered $1,289.99 in DV. [37] Yet, like with other members of the proposed Class, this number is substantially lower than what Plaintiff will show is the actual loss.  As Plaintiff's statistician's regression analysis of auction sales prices shows, Mr. Meyer's actual loss is actual loss is more like $5,341.61 and "the 'maximum' loss in value set by American Family of 10% (from which deductions can be, and are taken by American Family) does not reflect the actual market loss of vehicles.  Often, (and given how the Autosource tool works, almost always) the DV amount calculated by Autosource is well below the actual market value loss." *Siskin Decl.* at 9, 12.

Plaintiff, like other Class members, is entitled to recover his full DV damages. Trial of his claim will be the same as trial of those other members of the proposed Class.

*4.        Adequacy is Satisfied*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

---

[37] **Exhibit 17** to Hansen Decl (Autosource print out on Mr. Meyer's claim; Exhibit 5 to the Nielsen deposition).

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

interests of the class."  Adequacy involves a two-prong test: (1) the named plaintiff must appear to be able to prosecute vigorously the action through qualified counsel, and (2) there must be no conflicting interests between the class representative and the other members of the class. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)); *Weinberger v. Jackson*, 102 F.R.D. 839, 845 (N.D. Cal. 1984).  It is <u>presumed</u> that the interests of the representative plaintiffs do not conflict with those of the Class Members, and that counsel is adequate to represent those interests.  *H. Newberg & A. Conte, Newberg on Class Actions, §3.05 at 3-25 (3d ed. 1992).*

  Plaintiff's counsel have extensive experience in successfully prosecuting class actions, including insurance coverage and diminished value cases.  *See Hansen Decl*. **Exh. 18-20** (CV's of proposed Class Counsel).  Moreover, Plaintiff seeks to demonstrate that AmFam's common course of conduct was a systematic breach of contract and violation of Washington Law by failing to disclose coverage for diminished value and then for failing to fairly adjust and pay DV claims.  There is no conflict between Plaintiff and the other Class Members as the proposed Class representative, Mr. Meyer, seeks the same relief, using the same formula, for AmFam's failure to pay diminished value as required by the policy.  Here, the adequacy requirement is satisfied because Plaintiff and Class Members have a common interest in establishing that AmFam breached its policy contracts and its duty of good faith and fair dealing because they were similarly harmed by AmFam's failure to disclose, fairly assess and pay DV.  In addition, Plaintiff has retained experienced class action counsel, demonstrating his commitment to vigorously prosecute this case.

  D. *Certification is Appropriate Pursuant to Rule 23(b)(3*)

  Under Rule 23(b)(3), the Court may certify a Class if it finds that: 1) common questions of law or fact predominate over any questions affecting only individual members; and 2) a class action is superior to other available methods for the fair and efficient adjudication of the

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 17

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

controversy.  *See* Fed. R. Civ. P. 23(b)(3); *Grays Harbor,* 242 F.R.D. at 572-73.  Here, Plaintiff seeks certification of a Washington-only 23(b)(3) damages Class.

       *1.     Common Questions of Law and Fact Predominate*

"There is no single qualitative or quantitative test for predominance; rather, the Court pursues a pragmatic inquiry as to whether common questions represent a significant aspect of the case." *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2009 WL 973368, at *4 (W.D. Wash. April 10, 2009) *rev'd on other grounds* 395 Fed.Appx. 431 (9th Cir. 2010) (citations and quotations omitted).  "[I]ndividual damage questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class." *In re NCAA I-A Walk-On Football Players Litig.*, No. C04-1254C, 2006 WL 1207915, at *9 (W.D.Wash. May 3, 2006) (citations and internal quotations omitted).

Common issues unquestionably predominate here.  With respect to liability, the overriding common question is whether AmFam established a common course of conduct designed to avoid paying DV losses it was obligated to pay under the standardized language of AmFam's form insurance policies and whether it fairly and accurately paid those claims it was presented.  "Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure." *Mortimer v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000).  Under nearly identical circumstances as exist in this case, the trial and appellate courts in *Moeller* properly found predominance where it "identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers' course of conduct." *Moeller,* 155 Wn.App. at 150.

Although Plaintiff and Class Member's individual damages may vary, as detailed above, the *amount* of their individual and aggregate damages can be calculated using available, objective information contained in AmFam's own electronic records, combined with information on market clearing sales prices for damaged and repaired and undamaged vehicles.  Because diminished

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 18

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

value is a loss in market value, Dr. Siskin will be able to calculate the amount of diminished value AmFam owed those insureds within the Class both Class-wide **and** for individuals within the Class.  *See Siskin Decl.* at 4-5, 10-12.  Using regression analysis and sampling from the Class vehicles, and building upon his work in *Moeller*, Dr. Siskin will be able, through statistics, to isolate the effect of DV on the total value of the vehicle.  *Id.*  Individual damages can be determined for any Class Member through a claims process by applying the results of the regression analysis of diminished value to the repair estimates of the individual class member.  *Id.* at ¶ 12

Courts have long found predominance of common issues and certified 23(b)(3) classes when regression analyses can be used to calculate individual remedies.  *See*; *Brewer v. Salyer*, No. CV F 06-1324 AWI DLB, 2009 WL 1396148, at *7 (E.D. Cal. May 18, 2009) (commonality and manageability requirements met where plaintiffs intended to show causal connection based on statistical regression analysis); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007) (class certification appropriate where plaintiffs' experts presented a regression analysis stating that "[i]t is not necessary that plaintiffs show that their expert's methods will work with certainty at this time" but "plaintiffs' burden is to present the court with a likely method for determining class damages") (citations omitted);[38]

Regression analyses are "common" statistical tools.  *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 885 F.2d 575, 577 n. 3 (9th Cir. 1989).  See also *Reference Manual on Scientific Evidence: Reference Guide on Survey Research (2d. ed.)* (Federal Judicial Center, 2000), at 282.  Regression analysis has been found to be an accepted method of determining damages in class action cases.

---

[38] *See also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999) (same); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 691-693 (N.D. Ga. 1991) (same).

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 19

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

*Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 2006 WL 3371690 (D. N.J. Nov. 17, 2006),

citing *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1238 (3d Cir.

1993).

In any event, in the *Moeller* decisions, both the Court of Appeals and Supreme Court of

Washington recognized the efficacy of Dr. Siskin's *then proposed* (and now completed) model as

a tool to determine class-wide damages and that it was sufficient for the purposes of certification.

*Moeller*, 173 Wn.2d at 280-81 (plaintiff's mathematical model appropriate as it gave no

indication that damages would be proved or awarded before causation is determined); *Moeller*,

155 Wn.App. at 150 n. 14 (plaintiff's preliminary plan on how to gather data on vehicles was

appropriate).

### 2.    Class Treatment is Superior and Manageable

Rule 23(b)(3) sets forth factors for determining whether a class action is "superior to other

available methods for the fair and efficient adjudication of the controversy."  *See* Rule 23(b)(3);

*Grays Harbor,* 242 F.R.D. at 573.[39]  The focus is on "the efficiency and economy elements of the

class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most

profitably on a representative basis."  *Zinser,* 253 F.3d at 1190 (citations omitted).

Here, the superiority considerations weigh heavily in favor of class certification: Class

Members have little interest in pursuing individual actions.  In *Moeller*, the Court of Appeals

noted that because "each claim has a *de minimis* value"; individuals "are unlikely to pursue

---

[39] The four superiority factors include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.*

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 20

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

separate actions" and therefore a class action was preferable.  155 Wn.App. at 150.  Moreover, at every level in the *Moeller* appeal, the courts affirmed the trial court's finding that in a class action, Farmers' ability to investigate particular Class Member's claims and defend against the nature and extent of damages would not be impeded.  *See Moeller*, 173 Wn.2d at 280, 155 Wn.App. at 150 n.15.

To Plaintiff's knowledge, there are no pending individual actions by Class Members against AmFam for diminished value.  In fact, few of the Class Members even know they are owed diminished value, due to the success of AmFam's avoidance policies.  Indeed, it would be neither economically feasible nor efficient for Class Members to pursue their claims on an individual basis.  The monetary recovery for the majority of Class Members is relatively small. This, coupled with the cost of litigation makes vindication of Class Members' rights extremely difficult, if not impossible.  Allowing insureds to proceed as a Class affords them the only chance of recovery.

Finally, this case is manageable as a class action.  As described above, liability will be established through common evidence of AmFam uniform policy forms and uniform state wide diminished value avoidance policies.  Damages can be calculated through use of regression analyses without the need for individualized inquiries to determine Class Members' entitlement to relief or the amount of the relief.  Indeed, at its core, the controversy here is binary: Plaintiff maintains and will prove with common evidence that vehicles in accidents qualifying to be in the class cannot be fully restored to pre-loss condition and value, *and AmFam's own witnesses, including its 30(b)(6) designee, agree.*  Forcing numerous plaintiffs to litigate the practices alleged to breach a common contract and a common insurance claims policy "runs counter to the very purpose of a class action."  *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn.App. 245, 256,

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

63 P.3d 198 (2003).[40]

## VI. CONCLUSION

Based on the foregoing, Plaintiff respectfully asks the Court to GRANT their motion. They ask that Mr. Meyer be appointed to serve as class representative and that the undersigned counsel be appointed Class Counsel.

RESPECTFULLY SUBMITTED this 15th day of December, 2014.

Law Offices of STEPHEN M. HANSEN, P.S.


By: _____

STEPHEN M. HANSEN, WSBA # 15642
Of Attorneys for Plaintiff


Debra Brewer Hayes (admitted pro hac vice)
Charles Clinton Hunter (admitted pro hac vice)
THE HAYES LAW FIRM, P.C.
700 Rockmead, Suite 210
Kingwood, Texas 77339
Phone: 281-815-4963
Fax: 832-575-4759
dhayes@dhayeslaw.com
chunter@dayeslaw.com


Scott P. Nealey (admitted pro hac vice)
Law Office of Scott P. Nealey
71 Stevenson Street, Suite 400,
San Francisco, CA 94105
Telephone: (415) 231-5311
Facsimile: (415) 231-5313
snealey@nealeylaw.com

---

[40] "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *AmChem Prod., Inc. v. Windsor*, 521 U.S. 591,617 (1997)(quoting *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 344 (1997)).

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 22

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

**CERTIFICATE OF SERVICE**

The undersigned certifies, under penalty of perjury under the laws of the State of Washington, that on the 15th day of December, 2014, I electronically filed the above and foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following:

| | |
|---|---|
| John A. Bennett | Daniel R. Bentson |
| Attorney at Law | Attorney at Law |
| Bullivant Houser Bailey PC | Bullivant Houser Bailey PC |
| 888 SW Fifth Ave, Ste 300 | 1700 Seventh Ave, Ste 1810 |
| Portland OR 97204 | Seattle  WA 98101 |
| john.bennett@bullivant.com | dan.bentson@bullivant.com |

DATED this 15th day of December, 2014, at Tacoma, Washington.

_____
SARA B. PERRY, Legal Assistant

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 23

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX