# Exhibit "15"



IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

DAVID MOELLER, individually and
as the representative of all
persons similarly situated,

        Plaintiffs,

    vs.

Farmers INSURANCE EXCHANGE, and
Farmers INSURANCE COMPANY OF
WASHINGTON,

        Defendants.

Superior Court
No. 99-2-07850-6

**VERBATIM TRANSCRIPT OF PROCEEDINGS**

July 2, 2013
Pierce County Superior Court
Tacoma, Washington
Before the
**HONORABLE VICKI L. HOGAN**

Raelene Semago
Official Court Reporter
930 Tacoma Avenue
334 County-City Bldg.
Department 5
Tacoma, Washington  98402

REPORTED BY:  RAELENE SEMAGO, CCR, RPR, CMRS    1

1   everyone's schedule.

2                   MS. LATSINOVA:  Yes.

3                   MR. HANSEN:  Fair enough, Your Honor, and I

4   would assume if they, if it does change or add to an

5   expert report they would supplement the disclosure and we

6   would have the opportunity, if we choose to depose those

7   experts.

8                   THE COURT:  I think that would be given,

9   but --

10                  MS. LATSINOVA:  Naturally.

11                  THE COURT:  -- the initial premise is that

12  they want some hands on to see for themselves.

13                  MS. LATSINOVA:  And we will supplement to let

14  them know what develops.

15                  MR. HANSEN:  Thank you.

16                  MS. LATSINOVA:  Thank you.

17                  THE COURT:  Now we have the Summary Judgment,

18  on the exclusion -- let me put my notes aside -- that the

19  exclusion provisions apply to the loss.  It's such odd

20  language.

21                  MR. NEALEY:  It is odd language.  Titles try

22  to say it all, and we had like four Summary Judgment

23  motions, so I was trying to distinguish, but hopefully I

24  can be clearer in my argument than my title.

25                  THE COURT:  Let me see if I understand.  I

1   wrote this five different ways from Sunday to say what I

2   think Farmer's position is, is that there is an exclusion

3   in their policy that allows them not to be, or to be able

4   to deny coverage, and Plaintiffs' position is no, we don't

5   agree.

6           MR. NEALEY:  I think I would put it a little

7   differently, Your Honor.

8           THE COURT:  Okay.

9           MR. NEALEY:  I think you are accurate

10  90 percent, but this is the distinction I would draw.  We

11  are not denying that the Washington Supreme Court said

12  that if all you have is a pure stigma loss, if all you

13  have is a pure stigma loss, then you don't get diminished

14  value.  Okay.  I mean, clearly the Court said that stigma

15  is disfavored, that there is no recovery for stigma, and

16  that if a vehicle was restored back to -- fully restored

17  to its pre-loss condition, such that all that remains is

18  an intangible taint, then you don't get a reduction in

19  value.

20          So I think the way I am reading that and the

21  way that I have certainly argued it is that the Supreme

22  Court made clear that diminished value was covered.  I

23  mean, this is on Page 273 of the Supreme Court's opinion.

24  It says, "Significantly, Farmers does not appear to

25  dispute the notion that diminished value falls within the

1    scope of the coverage granted in its policy."  So there is

2    coverage for diminished value of any sort whatsoever, but

3    if all that you have is an intangible tainted stigma, the

4    law doesn't allow recovery for stigma, and so therefore,

5    there is an exclusion.

6             So the question then becomes, and the reason

7    why we filed the motion, Your Honor, is what do you do

8    with that affirmative defense?  And they pled it as an

9    affirmative defense, that there is an exclusion for

10   stigma.  What do you do with it?  And similarly,

11   Your Honor, what's the evidence that addresses that?

12            Of course under Summary Judgment, Your Honor,

13   after a showing is made that there is an absence of

14   evidence to support a particular claim as Young vs. Key

15   Pharmaceutical says, "Then the inquiry shifts to the party

16   with the burden of proof at trial."

17            So we put forward a submission, Your Honor,

18   solely and exclusively based on admissions of their own

19   witnesses.  We didn't cite a single -- we put together a

20   whole panoply of proof on this issue of restoration to

21   pre-loss condition.  We have a witnesses on pre-loss

22   condition.  We have a doctor.  We have body shop people.

23   We have a whole stable of people to address the issue of

24   pre-loss condition.  The question is whether they have any

25   proof that any of the vehicles within the class were

1    restored to pre-loss condition so that the only thing that
2    remains is an intangible taint, that's the first question.
3    The second question is, can they prove any portion of the
4    class is restored that way so all there is is a stigma
5    loss, and therefore under the Washington State Supreme
6    Court's opinion, if all there was was a stigma loss then
7    there wouldn't be coverage.

8            The second one is easily answered.  They don't
9    have any statistical proof, Your Honor.  They don't have a
10   witness who is going to come in and say, I've looked in a
11   certain portion of the damages in Dr. Siskin's model, and
12   this case really does come down to damages.  That is what
13   it is.  They don't have a witness who is going to say a
14   portion, or two percent, or five percent, 15 percent or 50
15   percent or any percentage of Dr. Siskin's number is
16   stigma.

17           So what they really have is they have made
18   efforts anecdotally claim that some of those losses are
19   arguably stigma.  Now, what do you do with that kind of
20   anecdotal proof?  We certainly have class reps, and the
21   question is whether they have proof, whether those class
22   reps, for example, have only a stigma loss.

23           So why did I cite the burden of proof, because
24   I think that's where the motion starts.  They have raised
25   as a defense the fact that there is an exclusion that

1   applies.  The Supreme Court had said there is an exclusion
2   that applies if the vehicle is fully restored to its
3   pre-loss condition so that only an intangible taint
4   remains.  And who bears the burden of demonstrating
5   whether a vehicle is fully restored, so that only an
6   intangible taint remains?  And that's very clear in the
7   law, Your Honor.

8          We cited the Queen City case, 126 Wn.2d at 72.
9   It directly addresses the issue, and the Supreme Court
10  said that if it's a coverage issue, the insured has to
11  prove that they fall within the coverage clause.  But if
12  an exclusion, or a limitation on coverage is asserted,
13  then the insurance company has to prove that the person
14  falls within the exclusion.

15         We cite the Grange Insurance vs. Brosseau
16  case, and McDonald vs. State Farm, Stewart vs. American
17  States Insurance, all three of those cases are from the
18  Washington Supreme Court, and they explain why that rule
19  is, and that is because if you are trying to claim an
20  exclusion, it's narrowly construed, and therefore the
21  burden falls on the insurer to show that it falls within
22  an exclusion.

23         We also cited the Churchill case, which was by
24  Judge Zilly in the Federal District Court in which he
25  actually applies these rules, and we cite Allstate

1    Insurance vs. Strand, which is unpublished by Judge Robart
2    and he applies these rules.  He places on the insurance
3    companies in both of those cases, applies the Queen City
4    rule and cites it.  It's that the insurance company has to
5    prove that factually that the loss falls within the
6    exclusion.

7           Farmers doesn't cite any contrary law.  They
8    quote a different section of Queen City, which deals with
9    proving coverage, but this isn't a coverage issue.  I have
10   cited you the Washington Supreme Court's opinion.  This is
11   not a coverage issue.  The question is whether an
12   exclusion applies, and they even conceded it.

13          Then they cite Waite vs. Aetna.  That case
14   doesn't even involve exclusion.  The question was whether
15   there was coverage, and the question is whether they have
16   proved an exclusion.  And of course, they cite a bunch of
17   out of state opinions, and those don't have anything to do
18   with anything.  The Washington rule is very clear.

19          So do they then have evidence to prove that
20   any portion of the class, either as a percentage basis or
21   even anecdotally of the class, their vehicles were
22   actually fully restored to pre-loss condition so that all
23   that remains is an intangible taint.  That's the legal
24   standard that the Washington Supreme Court has set out.

25          Now, rather than trying to fight that battle,

1     rather than setting their proof up based upon the opinion

2     from the Washington Supreme Court what Farmers has tried

3     to do is they have a hired a law professor from Berkley

4     who they pay $1,200 an hour, a law professor.  And the

5     faculty of the University of California Bolt School of Law

6     who is going to come in, and he was quoted the exact

7     language from the Washington Supreme Court that stigma is

8     an intangible taint, and he disagreed with that.  Their

9     law professor, or Dr. Rubinfeld, he also disagreed with

10    their own appraiser.  Okay.  A guy who deals with value on

11    a daily basis, their auto appraiser, Mr. Fehrman, he

12    agreed that stigma was an intangible taint.

13             So their law professor wants to disagree with

14    their own valuation expert and the Washington State

15    Supreme Court, and he wants to argue, and Farmers wants to

16    come in and argue, I guess, to the jury that this case is

17    all about lemons and it's about information flow, and it's

18    about what people know, and they want to quote, you know,

19    some article by a Nobel Prize winning scientist.

20             Well, it's the oldest rule in the book that

21    it's the purview of the Court to establish what the

22    contractual obligation is.  Washington Supreme Court has

23    established that definitively.  It's the law of the case,

24    and Dr. Rubinfeld's opinions have nothing to do with this

25    case.

1          And we have, obviously, you know, we have
2     filed a motion to strike that evidence from the record.
3     They simply cannot by bringing in a high powered,
4     high-priced law professor try to make an end run around
5     the decision of the Washington State Supreme Court.  I
6     mean, to the extent that this was an issue, I believe that
7     Your Honor will appropriately give the jury an instruction
8     that they have a burden of demonstrating the vehicles
9     within the class are restored fully to their pre-loss
10    condition so that the only thing remaining is an
11    intangible taint.  And if that's the instruction given to
12    the jury, then we believe that they don't have any
13    evidence to meet that standard, and if they don't have any
14    evidence to meet that standard, then Summary Judgment is
15    appropriate at this point.

16          The evidence we have cited is voluminous,
17    Your Honor.  Their own people have admitted that vehicles
18    cannot be placed back so that all that remains is an
19    intangible taint.  Most recently, Mr. Fehrman -- or
20    Mr. Armstrong, their designee in Georgia, said in Georgia,
21    you know, vehicles that have paint on them and Bondo on
22    them, that those vehicles have a tangible loss, that a
23    demonstrable loss.  Therefore, it's not a stigma.  That's
24    our class, Your Honor.

25          So having admitted that what contrary evidence

do they do?  Well, they cite a bunch of people, their own
experts that want to talk about, well, there is some
manufacturing dimensional specifications, or here is a
crash test that shows that you got the same Gs.  Well,
that doesn't have anything to do with whether the vehicle
was fully restored, so that all that remains is an
intangible taint on the vehicle.

They have to demonstrate what the Washington
Supreme Court has said they need to demonstrate in order
for an exclusion to apply, and Your Honor, they don't have
any evidence of that.  And the only evidence, in fact,
that they have been able to cite in their whole brief if
you go through and read it, and you ask yourself, does
this evidence if you look at the evidence they cite, and I
think our reply points this out, if you look at the
evidence they cite and you look at it through the lens of
the Washington Supreme Court's definition of what isn't
covered, which is an intangible taint, none of it matches
with the exception of literally two sentences at the end
of their brief where they try to cite Michael West, who is
their actual body shop guy, and he looked at this sample
of ten vehicles.

And Mr. West, as we pointed out in our brief,
Mr. West tried to claim that as long as you restore the
vehicle to its same functional condition that it was

1    restored back to pre-loss condition.  Well, he gives the
2    opinion that these cars are back at pre-loss because he
3    says they are back in the same functional condition.
4    Well, that's not the legal standard, and if the evidence
5    doesn't meet the legal standard, in fact, that was
6    specifically what was rejected by the Washington State
7    Supreme Court.  An appraiser -- I mean, a body shop guy
8    can't overrule the Washington Supreme Court the same way
9    that Dr. Rubinfeld can.

10            So that evidence doesn't meet the standard,
11   and in fact, all he says is gee, upon a first look at the
12   vehicle, I couldn't tell the repairs, but then he goes on
13   and says, and if you read the quote, when he actually
14   looked at them, and he got under and looked, he could
15   tell, for instance, where the quarter panel was welded on.
16   So he knows there is a tangible difference.  You have --
17   the vehicle, whole quarter panel is cut off and then there
18   is welds on there.  And he can tell it's welded because he
19   looks at the welds.

20            So there is tangible evidence to use the word
21   of the Washington Supreme Court, or their own appraiser,
22   Mr. Fehrman, that the vehicle was different.  So that
23   doesn't meet their burden of coming forward with evidence
24   and anyway, there is no evidence of the percentage of the
25   class or anything like that.  It's just a single anecdotal

1    report, even if it met the standard, which it doesn't.

2              Then you have got, they cite their own

3    appraiser -- I mean, their own guy who works in Detroit,

4    Mr. Sears, and literally, Your Honor, the only thing that

5    they can come up with is Mr. Sears saying that he

6    personally just bought, like now, 12 years after the class

7    period he bought a Cadillac, and for some reason he didn't

8    notice when he bought the car that there were five panels

9    on the car that the paint was messed up.  So, this guy

10   goes and buys a car that's been sitting on the lot, he

11   gets a screaming deal on, he doesn't notice there is some

12   paint issues with the car, and then he says, and this is

13   literally what they quote, he takes it back, they repaint

14   those panels and he then claims he can't tell.  This is a

15   guy who couldn't tell that it was damaged in the first

16   place.  I mean, and of course we are talking not class

17   members vehicles, we are not talking repairs within the

18   class.  We are talking something done 12 or 13 years

19   later.  It doesn't meet their burden.

20             The last thing they try to cite is Ray Priest

21   who was a fact witness, and there is a history here,

22   Your Honor, and it helps to explain.  Farmers originally

23   had a witness list, Your Honor, that had about 125 people

24   on it.  We went into Judge Murphy and we said, they can't

25   have 125 people on here.  They had, I think, 80 internal

1    witnesses from Farmers on their list.  And we asked Judge
2    Murphy to cut down the list and ordered them to only have
3    so many.  And the count and one of the arguments we made
4    was these people are listed as fact witnesses.  They are
5    not disclosed as experts, and therefore, they can't
6    testify beyond just what they personally know as fact
7    witnesses, regarding I should say, Your Honor, class
8    members vehicles.  Not more general opinion testimony.
9    And Ms. Latsinova in response said, none of these fact
10   witnesses will testify to any opinions whatsoever, which
11   is, of course, the appropriate standard.  And if so, they
12   will be struck.

13           So now we are sitting here on the eve of trial
14   and their response to Summary Judgment is to cite the
15   30(b)6 they took of Manheim which was disclosed as a fact
16   witness where the guy who is the general manager today of
17   the facility of the Manheim facility that sells cars in
18   Kent, he comes in and says that when cars today are
19   repaired at the Manheim Body Shop that he is, and I will
20   read it, this is what he is saying about repairs today:
21   "Case by case of -- the question was, when the repair was
22   unacceptable and you sent it back to the shop, would it be
23   done correctly so that it was not detectable?"  And I made
24   an objection to Ms. Latsinova's question.  Vague and
25   ambiguous as framed as to what's being discussed in

1    timeframe.  And the witness responded, and this is on
2    Page 88, and that is their Exhibit 19, Your Honor, "Case
3    by case it would depend on the damage.  It would depend on
4    the damage, the location.  There are some damages that no
5    matter how good you repair it, it's always going to be
6    detectable.  But there are some minor damages that can be
7    repaired that are, in fact, undetectable, just from a
8    brief inspection during the time of looking at the
9    vehicle."

10            So the question is based on that statement,
11   which is an opinion by a fact witness testifying about
12   repairs done at some unspecified time, whether that is
13   sufficient evidence to meet their burden of demonstrating
14   in any way, shape or form, that any of the cars within
15   this class only had an intangible loss, and the answer is
16   it isn't.  It's not appropriate testimony to respond to a
17   Summary Judgment motion.

18            So we filed the motion.  We believe they don't
19   have any evidence to argue these issues to the Court.
20   Obviously, you know, if the motion is denied a lot of this
21   stuff, unfortunately, will be part of motions in limine
22   because we will try to winnow down what fits within the
23   standard, but I think, Your Honor, if you look at the
24   Washington State Supreme Court's opinion, I think it's
25   clear what is excluded, and that's vehicles that only have

1      a intangible taint after being fully repaired, and

2      frankly, Farmers just doesn't have any evidence that any

3      vehicles in this class fit that definition, and therefore,

4      this whole issue of there being an exclusion, or some

5      vehicles don't fall within coverage, it's not part of this

6      case at this point, because they just don't have any

7      evidence to meet their burden.

8                  Unless you have any questions, Your Honor --

9                  THE COURT:  No, I don't have any questions.

10     All right.  Who is arguing now?

11                 MR. PHILLIPS:  I am, Your Honor.

12                 THE COURT:  All right.

13                 MR. PHILLIPS:  Your Honor, Stevan Phillips for

14     the defendants.

15                 Counsel is wrong on what the Supreme Court

16     held, and he is wrong on what Farmer's position is.  The

17     Supreme Court --

18                 THE COURT:  Well, let's back up for a minute.

19     How I wanted to go to Bolt School of Law.  Darn.  All

20     right.  Go ahead.

21                 MR. PHILLIPS:  I am not actually sure that

22     Dr. Rubinfeld is a law professor.  I think he is an

23     economist and a statistician that teaches economics in the

24     law school.

25                 THE COURT: All right.

1     MR. PHILLIPS:  But that's a minor

2  misstatement, I'm sure.

3     The Supreme Court -- let's -- counsel is

4  proceeding on the assumption that the Supreme Court has

5  determined the liability issues in this case, and that is

6  a result of upholding the certification we are now in a

7  strict liability phase and he doesn't have to prove

8  anything.  That isn't what happened, and that isn't where

9  we are.

10     This is a coverage case.  All the Supreme

11  Court held was that if they can prove that there is a

12  diminished value loss, there is coverage for it, but

13  that's their burden, not our burden to disprove it.  They

14  have to prove that everyone in the class suffered a

15  diminished value loss because that is how they get into

16  the coverage.  This is the normal burdens of everyone

17  making a first party damage claim.

18     They cite is <u>Churchill</u> case.  That happened to

19  be a property damage case under an all risk policy, and

20  that is the burden.  You have to prove that there is a

21  cover and cause of loss.

22     The certification ruling is not a ruling on

23  the merits.  There were no merits to decide.  And because

24  they want certification, the burden doesn't shift to us to

25  disprove their allegations.  They came into court and

1    said, we promise we can do this.  Now they have to prove

2    it.  It's their burden.  Not ours.  And I think the quote

3    that we cited from Queen City Pharmacy is directly on

4    point.  The argument that any limitation on coverage is

5    exclusionary in nature and should be treated as an

6    exclusion is plainly wrong.  Under that rationale,

7    literally anything less than the insurer's unconditional

8    promise to pay any amount at any time for any reason and

9    any circumstances would be an exclusion, and the insurer

10   would bear the burden of proof.

11            It would not be necessary for the policy

12   holder to prove anything to bring its claim within the

13   coverage.  That argument betrays a fundamental

14   misunderstanding of the logic and organization of an

15   insurance policy.  The coverage language specifies a

16   number of factors that must be present for coverage to

17   exist.  It is their burden to meet all of those factors

18   and to prove to the Court by a preponderance of the

19   evidence that everyone in the class suffered the loss that

20   they claim exist.  They promised they could do this

21   through aggregate group to establish liability and

22   damages, and that's what they have to do.

23            They are trying to bootstrap the certification

24   ruling into a merit rulings that shifts the burden to us

25   to disprove their allegations.  No court, no cite that

1    they have made ever has held that.  They have the burden
2    of proving class reliability, and the predicate for that
3    was that no car was returned to the pre-loss condition in
4    terms of function, appearance, safety or reliability.
5    Each car was worse after repairs, than before the
6    accident, not just different.

7            If the Supreme Court had wanted to hold that
8    all they had to do was show that the car had been repaired
9    and repainted, the case would be over.  There would be no
10   need for a trial.  We wouldn't have to come back in front
11   of you to see just what kind of proof they have.

12           There is evidence -- they have to -- that's
13   why the Supreme Court and the Court of appeals parsed
14   through the language of the policy, Your Honor.  You know
15   they went through the same analysis in each court saying
16   what does it mean to have a loss?  How do you do it?
17   Well, you end up with an accident which causes property
18   damage.  Property damage is defined in the policy as
19   physical injury to, or destruction of tangible property.
20   They have to show after repairs there is property damage.
21   That means physical injury.  It doesn't mean that
22   something got their car painted.

23           Of course, it's not identical to the way it
24   was before the accident.  We didn't disassemble the cars
25   and send it back to the factory to be rebuilt and

1  repainted.  And nothing in the Supreme Court says we have

2  to do that.

3       So these are -- this is a continuing physical

4  injury.  Everybody who has looked at Moeller, all the

5  Federal District Court judges have said if they can prove

6  that continuing physical injury, then there is coverage

7  for it, and we agree.  If they can prove continuing

8  physical injury and it caused loss and it caused damage,

9  that's where our obligation is.

10      The fact that we say, and this whole debate

11  about stigma is what is the cause of the loss, not an

12  exclusion in the policy.  There is no exclusion in the

13  policy for stigma.  We are not arguing there is an

14  exclusion.  If there was an exclusion we do have the

15  burden, but there is no exclusion.

16      The question is, have they proven a covered

17  cause of loss?  And the Supreme Court has said that if all

18  you have proved is that your loss is caused by stigma,

19  that's not what you are claiming, that's not what you get.

20      So on this motion, Your Honor, it's the

21  plaintiffs who have the burden.  They have somehow decided

22  that the Defendants have the burden to disprove their

23  allegations.  That has never been the law in any coverage

24  case that has ever been cited in the State of Washington.

25      And by the way, the out of state courts that

1    we have cited are perfectly consistent with the rule in

2    Washington.  The plaintiff has the burden of proving the

3    loss, due to a covered cause of loss, and if he proves

4    that the loss was due to numerous factors, then he hasn't

5    carried his burden.  That is clearly the law in

6    Washington.  The <u>Waite</u> case made that clear.  <u>Queen City</u>

7    Farms made that crystal clear.

8         Now, coverage doesn't apply for diminish value

9    just because the car was in an accident.  This is not a

10   bond.  This is not a guarantee.  This is a contract of

11   indemnity, and indemnity for which the insured has the

12   burden of proving loss under the policy.

13        There are numerous disputed issues of fact on

14   this motion.  This was something they argued all the way

15   through the Courts of Appeal and the Supreme Court, that

16   there were disputed issues of fact of whether the cars

17   were returned to pre-loss condition.  That continues to be

18   disputed issues of fact.

19        They claim they had evidence that they

20   weren't.  We claim that we have evidence that they were,

21   or that most of them were.  The Supreme Court said this

22   was the disputed issue.  Causation, which is really what

23   we are talking about is always a factual issue under a

24   coverage case, must be proven at trial by the plaintiffs.

25   That is their burden.

1          We also believe, Your Honor, the burden is not

2     just to show that the cars weren't the same.  That means

3     nothing.  That's irrelevant.  What the Supreme Court and

4     what the Court of Appeals said is you have to show

5     property damage.  That's how it's defined in the policy.

6     That's physical injury.

7          Now, what does it mean to return a car to its

8     pre-loss condition?  How do you measure it?  These are

9     disputed issues.  The plaintiff states that whatever the

10    standard is, you can never do it.  We say you can always

11    do it, and we have cited both our own people and the

12    expert declarations and reports that we put in extensive

13    materials showing that people with extensive experiences

14    in designing, building, repairing and analyzing metal in

15    cars, that in fact, cars are designed to be restored to

16    their pre-loss condition and to be just as good as they

17    were before the accident.  Are they identical?  Of course

18    not.  Nobody is claiming they are identical, and no one is

19    claiming they have to be identical, but they are just as

20    good, and if they are just as good, we contend there is no

21    loss in value.

22          They say that the difference is -- they say

23    all cars are different.  We say no.  They say damages were

24    caused by a physical difference.  We say there could be

25    many causes for that, many that aren't covered.  And as

1    you have heard, they say Siskin has done a regression

2    analysis to measure this.  We say it isn't.  These are all

3    factual issues to be resolved at trial, all of think

4    plaintiff has the burden of proof on.  None of them

5    involve an exclusion of the policy.  They are simply the

6    predicate for showing covered loss.

7            The policy says we pay for loss to your

8    insured car caused by collision.  As the Court of Appeals

9    and the Supreme Court have both said, loss means direct

10   and accidental loss of damage to your car.  They said the

11   policy is ambiguous because of the limits of liability,

12   which is not an exclusion, but a method of determining how

13   we are to compensate for loss was ambiguous and included

14   notions of value.  And therefore, we are on the hook for

15   value if they can prove it.

16           Nothing in the Supreme Court has said anything

17   about that they have established their proof or satisfied

18   their burden of proof.  In fact, the example that the

19   Supreme Court gave of weakened metal is something they

20   have to prove.  It's not something that we have to

21   disprove.

22           There is no presumption that cars were not

23   repaired to their pre-loss condition.  There is no

24   presumption that cars suffered damage, and there is no

25   presumption that all cars in the class had unrepairable

1    damage.  And there is no presumption that they get by

2    saying cars sold at action and repaired sell for less than

3    cars that weren't repaired.  And there is no presumption

4    in favor of the plaintiff just because they assume that

5    all cars were repaired to the best available standard, or

6    just because they don't want stigma damage.

7           This is contractual indemnity coverage.  It

8    doesn't cover torts.  It doesn't cover all damages

9    arising.  It is a contract, and the insured bears the

10   burden of proof of showing it comes within the contract.

11          There has been lot of discussion about Georgia

12   that's somehow relevant to this case.  And Mr. Nealey

13   said, well, I don't know, you have this formula, which is

14   Exhibit 4 to Mr. Armstrong's deposition and that -- we

15   don't know where that came from.  Well, he testified it

16   came from Section 17C of the settlement agreement that was

17   used to settle the Mabry class.  In Mabry there was no

18   determination of the burden of proof, or that plaintiffs

19   had met their burden of proof.

20          What happened in Mabry was after the Court

21   ruled on coverage it went back to trial, just like this

22   case, and then it settled.  And in the settlement

23   agreement this formula was adopted as a method of settling

24   the diminished value calculations.  It was approved by the

25   Court, and that's where this comes from.

1          In fact, to show the tremendous difference in
2     Georgia and this case, you just have to look at the
3     examples of cars that are calculated under this Exhibit 4,
4     both of whom would actually be in the class here, except
5     for the -- there is a Jeep that actually would have 2,000
6     miles outside the class.  For that car, the formula
7     resulted in a diminished value payment of $6.42 in
8     Georgia.  And for the 2004 Winstar results in a
9     calculation of $653.05.

10         So these calculations have nothing to do with
11     the Washington Supreme Court, with the Washington rule.
12     They are based on an assumption that every car in an
13     accident suffers a loss.  You start with a 10 percent
14     reduction, and then you reduce that by a number of
15     modifiers.

16         And the fact that Mr. Armstrong didn't know
17     what stigma was, not surprising, because Georgia doesn't
18     care.  What they want you to do is pay for the loss in
19     every car in every accident.  They don't make a
20     distinction between stigma and physical damage.

21         These so called admissions that Farmers said
22     the vehicles are not the same are completely irrelevant.
23     Every one of those witnesses testified that the cars can
24     be and are repaired to their pre-loss condition in every
25     respect.  In fact, some were better than they were before

1    the accident.  As I said before, Your Honor, whether it is
2    the same is not the issue.  It is not the requirement to
3    prove diminished value loss.
4             The Supreme Court was very clear in saying
5    that whether the policy requires Farmers to repair the car
6    so that it's substantially the same functional condition
7    or that plus value, has little bearing on the
8    interpretation of the policy.  That's what they sent the
9    case back here for to determine, what does it mean to
10   return the car to its pre-loss condition?  How do you
11   prove it, and what is the amount of the loss?
12            They somehow interpreted the Supreme Court
13   decision to say they are done.  They don't have to prove
14   anything.  Farmers has to disprove that cars in the class
15   are entitled to all of these presumptions.  This whole
16   notion of stigma is not a affirmative defense.  It is
17   showing that there is no coverage.  They have proven a
18   non-covered cause of loss.  If that's all they have
19   proved, they lose.  It's not because of an exclusion.
20   It's because they haven't established coverage in the
21   first instance.
22            Our discussion of what they have to prove in
23   the brief they don't like, but it's right on point.  It's
24   not a rehash of the Supreme Court's opinion.  What it is
25   is it's showing in no uncertain terms what the opinions

1      mean, and what the plaintiffs burden is following the

2      return of that case to trial.

3              The Supreme Court did not hold in any way that

4      they have proved anything.  These are allegations.  We

5      have only a class certification, not a merits

6      determination.  That's why we are back here.

7              THE COURT:  And I don't think the plaintiffs

8      disagree with you on that.  I think that's exactly what

9      the Siskin motion was all about that Farmers brought, and

10     I don't think that plaintiffs disagree with you

11             MR. PHILLIPS:  What he is saying is, he is

12     seeing the motion here is Farmers has not proven that cars

13     suffer stigma loss.  Therefore, they haven't carried their

14     burden.  It's not our burden to do that.  It's their

15     burden to show that they have a covered loss, and what

16     does it mean to have diminished value.  That's their

17     burden.  It always was their burden, and it has never

18     ceased being their burden.

19             THE COURT:  I don't think that plaintiffs

20     disagree on that either.

21             MR. PHILLIPS:  Well, they disagree as to what

22     it means to prove that.  And we have a very big

23     disagreement on that, because we don't have to prove

24     anything.  We don't have to disprove any allegations.  I

25     think I probably -- I just have one or two more points,

1    Your Honor.

2                THE COURT:  Okay.

3                MR. PHILLIPS:  I am trying to limit myself to

4    the same time that Mr. Nealey took.

5                THE COURT:  All right.  Thank you.  And I

6    should have said for the record I did get your

7    supplemental materials as well.

8                MR. PHILLIPS:  Okay.

9                THE COURT:  I mentioned I had got Plaintiffs'

10   supplementals.  You sent in the Mabry decision as well,

11   and then the materials that also included the worksheets.

12               MR. PHILLIPS:  Right.

13               THE COURT:  So I just wanted to make that for

14   the record.  All right.  Go ahead, Mr. Phillips.

15               MR. PHILLIPS:  Yes.  One point on the motion

16   to strike, if Your Honor is seriously considering the

17   motion to strike which was found in their reply --

18               THE COURT:  I'm not.

19               MR. PHILLIPS:  We would like a chance to --

20               THE COURT:  I'm not.  By this point I have

21   read everything in terms of what I am considering and what

22   I am not considering, and I am more interested in the

23   substantive motion right now.

24               MR. PHILLIPS:  I just want to read one thing

25   --

1         THE COURT:  All right.

2         MR. PHILLIPS:  -- that was attached to, I

3    believe, Mr. West's declaration.  He referred to a manual

4    from the Society of Automotive Engineers, Page 115, and it

5    says, "Every damaged vehicle that can be repaired

6    economically can be returned to its original pre-accident

7    condition with a technically correct repair."

8         Now, we say this has been done.  We say

9    following manufacturer's specifications, doing a proper

10   repair does this.  This is a disputed issue of fact,

11   Your Honor, which needs to be tested in front of the jury.

12   Who is believed at this point.

13        And so I think, Your Honor, there are both

14   wrong assumptions here about the nature of the case, and

15   the disputed issues of fact that prevent any Summary

16   Judgment from being entered on this point.  It's a

17   strawman argument.  It's an effort to shift the burden

18   that cannot possibly be correct.

19        THE COURT:  All right.  Thank you.

20        Mr. Nealey.

21        MR. NEALEY:  Your Honor, I think that this

22   really does come down to a question of what we are trying

23   to prove and why we are here.  And you are a hundred

24   percent correct.  I am not saying that the Supreme Court

25   factually decided anything.  It didn't.  But it sent this

1    case back with some instructions about coverage and what

2    was covered and what wasn't covered.  And in doing so, it

3    rejected certain arguments by Farmers in no uncertain

4    terms.  Okay.  And the arguments that were rejected is a

5    theoretical argument and now can't be raised as a factual

6    argument.  It has to meet the standards of the Washington

7    Supreme Court.

8              The question that the Supreme Court asked and

9    answered, the question presented to the Court is found on

10   page 270 to 271 of the opinion.  And it said: "As noted,

11   the question presented requires us to determine whether

12   Moeller's insurance policy requires Farmers car to repair

13   it in, 'substantially the same functional condition it was

14   pre-accident', or if instead the policy requires Farmers

15   to repair a car so that it has the same value it had

16   pre-accident."

17             Now, Farmers wants to ignore that distinction.

18   Farmers argued to the Washington State Supreme Court, and

19   in essence, they are arguing now, that all that they have

20   to do is put the car back so that it is, "substantially

21   the same functional condition".  Okay.  And the Supreme

22   Court said, no, that's not your obligation.  Your

23   obligation is to put it in the words of the Supreme Court,

24   and I am quoting this --

25             THE COURT:  What page of the --

1        MR. NEALEY:  This is on Page 170 to 171.  I'm
2    happy to leave you my -- I'm sorry, 270 to 271.
3        THE COURT:  I have a copy, you know, in my
4    pages 1 through 13, and so let me find mine.
5        MR. NEALEY:  I have a printout that's from
6    Lexus.  That's the problem everybody has different
7    printouts.
8        THE COURT:  I have Lexus.
9        MR. NEALEY:  It's under heading A.
10       THE COURT:  I've got it.
11       MR. NEALEY:  Right here, it's paragraph 9 of
12   the opinion.  And this is the key language, because they
13   rejected that the vehicle only had to be in substantially
14   the same functional condition, and what they say, the
15   other option is, or instead the policy requires Farmers to
16   repair a car so that it has the same value it had
17   pre-accident.  That is the key language because that was
18   the question.  Do the repairs that they do, are they some
19   nebulous functional standard, or do they have to repair it
20   such that the vehicle after repairs has the same value it
21   had pre-accident.  That's the question.  Okay.
22       So do they have evidence that they can put
23   forward, because that's how the policy has been
24   interpreted and how stigma comes in and how the language
25   we keep fighting over "intangible taint" is the notion

1        that if you restore a vehicle such that it's fully

2        restored and absolutely the same condition, so that all

3        that remains is an intangible taint, there is no tangible

4        difference.  So no one can tell that the vehicle has been

5        in an accident, and the only reason that you would ever

6        think something about it is not because there is something

7        you can see on the vehicle, but psychologically, so to

8        speak, then that is not covered.

9               So having raised this question, then the issue

10       is, do we have a coverage dispute, Your Honor, of whether

11       these vehicles are restored to the same value they had

12       pre-accident, whether the repairs put the vehicles back in

13       the same value.  Is that a coverage question, or is it an

14       exclusion question?

15              Well, the Supreme Court says on paragraph 15

16       of the opinion, "Significantly Farmers does not appear to

17       dispute the notion that diminished value falls within the

18       scope of the coverage granted in this policy.  But it

19       maintains that such coverage is foreclosed by policy

20       language limiting Farmers' liability.  The scope of the

21       policy's coverage, therefore, turns on whether the

22       limiting provisions unambiguously exclude diminished value

23       loss."  Okay.  And then the opinion where it says that the

24       repairs to the vehicle has to restore its value, or you

25       have to pay the difference, that's the rest of the

1    opinion.

2           So Your Honor, on Page 19 we cite the actual

3    language from Queen City.  They are arguing that this is

4    all coverage, there is no distinction.  But this is what

5    Queen City says, and I am quoting from line 3 to line 18

6    of our brief on Page 19.  Quoting exactly what the Supreme

7    Court of Washington says, "It is logical that the policy

8    holder as claimant should include -- it is logical that

9    the policy holder as claimant should bear the burden of

10    proof of establishing that its claim is within the

11    coverage of the policy, including that the property damage

12    was caused by an occurrence and that once it has done so,"

13    and remember, I cited you earlier, Farmers has already

14    disputed this agreed, conceded, that diminished value

15    falls within the scope of the coverage, but then it

16    continues, "Once it has done so," and that's been done in

17    this case, we have got coverage, they have conceded that

18    point, and on paragraph 15 of the Washington Supreme

19    Court's opinion they state that Farmers conceded coverage

20    then Queen City continues, "The insurer shall bear the

21    burden of proof of establishing that the claim is within

22    an exclusion."

23           So if you combine the black letter rule from

24    Queen City, which is written on Page 19 of our brief at

25    lines 3 to 18, and you combine that with paragraph 15 of

1    the Washington Supreme Court's opinion where they state
2    that Farmers has conceded the diminished value falls
3    within the coverage grant of the policy. And then as it
4    continues, the question we have got is whether we have an
5    exclusion that applies. They contended that there is an
6    exclusion for diminished value in the like kind and
7    quality language, repair, replace to like kind and
8    quality, and the Supreme Court said, no, you have to
9    restore the vehicle fully.

10            So citing the again, the question presented
11   language that I gave you from paragraph 9, so that the
12   vehicle has the same value, "To repair a car so that it
13   has the same value as pre-accident." That's the question
14   for the jury to decide.

15            Now, why we are here is because they are
16   trying to argue that somehow there is an exclusion and we
17   have to prove coverage. They actually bear the burden
18   under Queen City of proving that an exclusion applies, and
19   that exclusion would be proof by them that any single car,
20   or any of the class members' cars were, "fully repaired"
21   so that the vehicle has the same value as pre-accident.
22   They don't have any evidence of that, and they certainly
23   don't have any evidence, Your Honor, that any of these
24   vehicles were repaired so that you can't tell they were
25   repaired, so that all you have is an intangible taint.

1           No evidence is present in the record, and

2      therefore, Summary Judgment is appropriate, Your Honor, on

3      this issue.  And it simplifies the case, and it correctly

4      then by taking away this issue of whether this is a

5      manufacturers' specification or whatever, it correctly

6      focuses the trial and the issues on what the Washington

7      State Supreme Court said it should be, which is whether

8      Farmers has repaired a car so that it has the same value

9      that it had pre-accident.

10          These issues, Your Honor, are just at this

11     point factually not disputed.  They don't have any

12     evidence to show that any tangible differences remain, and

13     therefore, the entire focus of the trial, Your Honor,

14     should be on value.

15          THE COURT:  All right.  Well, here is where we

16     are, and I think it's where we started, or at least my

17     comments were when we started this morning.  The Supreme

18     Court has spoken.  It is very clear to me, and

19     unfortunately I don't think that either side is going to

20     agree.  I don't think, as I indicated, that Plaintiff

21     disagrees with Farmers' position on their burden.

22          The Supreme Court has spoken and said if

23     Plaintiffs can meet their burden, and that's a computation

24     excluding stigma, then there is coverage under the

25     Farmer's policy.  They have to show that there was a

1    diminished value loss.  The question then becomes Step 2,

2    whether or not there is an exclusion to support Farmers'

3    decision, and I think that Moeller from the Supreme Court

4    affirmed that there were two possible interpretations.

5    Whether or not there is an exclusion, even if the

6    Plaintiffs' meet their burden, to deny paying diminished

7    value.

8              The burden is on Farmers.  Summary Judgment is

9    granted.  They have failed on their standard of proof for

10   Summary Judgment, and the Supreme Court has spoken many

11   times on this issue.  But it's a two step process.

12             So with that, it's noon.  We will come back

13   after lunch at 1:30 and deal with the affirmative

14   defenses.

15             You are more than welcome to chat in the

16   conference room outside -- I think Andy unlocked it this

17   morning -- on the disputed remaining affirmative defenses,

18   because defendant's brief clearly indicated that there

19   were a number that were conceded, should be granted and

20   dismissed.  And in light of the rulings, there may be

21   additional ones that we can focus on after lunch.

22             MR. HANSEN:  I believe that trims two down and

23   possibly more.

24             THE COURT:  Well, like I said, you all can

25   talk about that.  I have a meeting so I have to stop at

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

DAVID MOELLER, individually and )
as the representative of all )
persons similarly situated, )
                              )
              Plaintiffs,     )
                              )
      vs.                     )   Superior Court
                              )   No. 99-2-07850-6
FARMERS INSURANCE EXCHANGE, and )
FARMERS INSURANCE COMPANY OF  )
WASHINGTON,                   )
                              )
              Defendants.     )

REPORTER'S CERTIFICATE

STATE OF WASHINGTON    )
                       ) ss
COUNTY OF PIERCE       )

     I, Raelene Semago, Official Court Reporter in the
State of Washington, County of Pierce, do hereby certify
that the forgoing transcript is a full, true, and accurate
transcript of the proceedings and testimony taken in the
matter of the above-entitled cause.

     Dated this 4th day of July, 2013.

RAELENE SEMAGO, CCR, RPR, CMRS
Official Court Reporter
CCR #2255

REPORTED BY:   RAELENE SEMAGO, CCR, RPR, CMRS          123