THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFF BUTLER and BRYCE MEYER,
individually and as the representatives of all
persons similarly situated,

            Plaintiff,

     v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY and AMERICAN
STANDARD INSURANCE COMPANY OF
WISCONSIN, foreign insurers,

            Defendants.

No. 3:14-cv-05305 RBL

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

Noting Date:  May 29, 2015

**Oral Argument Requested**

## TABLE OF CONTENTS

                                                Page

I. INTRODUCTION ............................................................... 1

II. BACKGROUND ................................................................ 2

III. STATEMENT OF FACTS ................................................. 4

    A.  Plaintiff Meyer ......................................................... 4

    B.  Christina Bower/Plaintiff Butler ............................. 6

IV. MEYER LACKS STANDING TO BRING CLAIMS AGAINST AMERICAN
    STANDARD ................................................................. 7

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

Page i

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

V. PLAINTIFF MEYER FAILS TO CARRY HIS BURDEN AS THE PARTY MOVING TO CERTIFY A CLASS. ................................................................ 8

    A. Defendants do not dispute that Rule 23(a)'s numerosity requirement would likely be satisifed. ................................................................ 8

    B. Plaintiff Meyer fails to carry his burden under Rule 23(a)'s commonality requirement. ................................................................ 8

        1. The proposed class period shifts and straddles the defendants' use of AutoSource. ................................................................ 13

        2. The payment of DV, and decisions regarding the amounts paid, depended upon a wide variety of factors. ................................................................ 13

    C. Plaintiff Meyer fails to carry his burden under Rule 23(a)'s typicality requirement. ................................................................ 15

    D. Plaintiff Meyer fails to carry his burden under Rule 23(a)'s adequacy requirement. ................................................................ 18

    E. Plaintiff Meyer fails to carry his burden under Rule 23(b)(3)'s requirements ................................................................ 21

VI. PLAINTIFF'S MOTION SHOULD BE DENIED ................................................................ 30

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S    Page ii
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                            Page

*Admasu v. Port of Seattle*
2014 WL 5464888 (Wash. App. Div. 1, Oct. 27, 2014)..................................................22, 29

*Akaosugi v. Benihana Nat. Corp.*
2011 WL 5444265 (N.D. Cal. Nov. 9, 2011) ..........................................................................8

Bates v. United Parcel Serv., Inc.
511 F.3d 974 (9th Cir. 2007) ...................................................................................................7

*Berschauer Phillips Const. Co. v. Mutual of Enumclaw Ins. Co.*
174 Wash. App. 1068, 2013 WL 1901071 (Wash. App. Div. 1, May 6, 2013) ......................19

*Comcast Corp. v. Behrend*
133 S. Ct. 1426, 185 L.Ed.2d 515 (2013)..............................................................................22

*Daniel F. v. Blue Shield of California*
2014 WL 3907150 (N.D. Cal., Aug. 11, 2014) ......................................................................13

*Dayton v. Farmers Ins. Group*
124 Wash.2d 277, 876 P.2d 896 (1994) .................................................................................22

*Defraites v. State Farm Mut. Auto. Ins. Co.*
864 So.2d 254 (La. App. 5th Cir., 2004) ...............................................................................30

*Degenhart v. AIU Holdings, Inc.*
2010 WL 4852200 (W.D. Wash., Nov. 26, 2010)..............................................1, 19, 28, 30

*Dehaan v. Farmers Ins. Co. of Washington*
172 Wash. App. 1047, 2013 WL 223514 (Wash. App. Div. 1, Jan. 22, 2013) ......................27

*Dukes v. Wal-Mart Stores*
964 F Supp 2d 1115 (N.D. Cal. 2013) ...................................................................................13

*Eisen v. Carlisle and Jacquelin*
391 F.2d 555 (2nd Cir. 1968) ................................................................................................19

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) .................................................................................................17

*Ensley v. Pitcher*
152 Wash. App. 891, 222 P.3d 99 (2009), *rev. denied*,
168 Wash.2d 1028, 230 P.3d 1060 (2010) .............................................................................19

*Erica P. John Fund, Inc. v. Halliburton Co.*
131 S. Ct. 2179, 180 L.Ed.2d 24 (2011)................................................................................21

*///*

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S     Page iii
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012) .................................................................... 18

*Fosmire v. Progressive Max Ins. Co.*
277 F.R.D. 625 (W.D. Wash. 2011) ...................................................... 13, 20

*Franklin v. Government Employees Ins. Co.*
2011 WL 5166458 (W.D. Wash., Oct. 31, 2011) .......................................... 23

*Government Employees Ins. Co. v. Bloodworth*
2007 WL 1966022 (Tenn. App., June 29, 2007) ...................................... 19, 27

*Gustavson v. Wrigley Sales Company*
961 F. Supp. 2d 1100 (N.D. Cal. 2013) ......................................................... 8

*Hai v. STL Intern., Inc.*
180 Wash. App. 1026, 2014 WL 1494107 ................................................... 17
(Wash. App. Div. 2, Apr. 15, 2014)

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*
105 Wash.2d 778, 719 P.2d 531 (1986) ...................................................... 29

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) .................................................................... 18

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992) ............................................................... 16, 17

*Heaphy v. State Farm Mut. Auto. Ins. Co.*
117 Wash. App. 438, 72 P.3d 220 (2003), *rev. denied,*
150 Wash.2d 1037, 84 P.3d 1230 (2004) (Table) ............................... 11, 12, 13

*Heaphy v. State Farm Mut. Auto. Ins. Co.*
2005 WL 1950244 (W.D. Wash. Aug. 15, 2005) .......................................... 11

*Hovenkotter v. Safeco Corp.*
2009 WL 6698629 (W.D. Wash. Aug. 3, 2009) .............................................. 8

*Huynh v. Chase Manhattan Bank*
465 F.3d 992 (9th Cir. 2006) ....................................................................... 8

*In re NASDAQ Market-Makers Antitrust Litig.*
172 F.R.D. 119 (S.D. N.Y. 1997) ............................................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation*
2012 WL 273883 (N.D. Cal., Jan. 30, 2012) ............................................... 20

*Janhunen v. Farmers Ins. Co.*
Washington Superior Court (Pierce County) Case
No. 99-2-07850-6 ..................................................................................... 24

///

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S    Page iv
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

*Landry v. Luscher*
95 Wash. App. 779, 976 P.2d 1274, *rev. denied*,
139 Wash.2d 1006, 989 P.2d 1140 (1999). ...............................................20

*Laughlin v. Allstate Ins. Co.*
130 Wash. App. 1018, 2005 WL 2981685 (Wash. App. Div. 2, Nov. 8, 2005),
*rev. denied*, 157 Wash.2d 1018, 142 P.3d 607 (2006)...........................12

*Lee v. Am. Nat. Ins. Co.*
260 F.3d 997 (9th Cir. 2001) ......................................................................7

*Lujan v. Defenders of Wildlife*
504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).............................7

*Mansker v. Farmers Ins. Co.*
2010 WL 3699856 (W.D. Wash., Sept. 14, 2010).....................................28

*Maryanouskiy v. American Family Mutual Ins. Co. and Sharon Wimpress*
U.S. District Court for the Western District of Wisconsin, 11-cv-106-bbc. ...........17

*Moeller v. Farmers Ins. Co. of Wash.*
173 Wash.2d 264, 267 P.3d 998 (2011) ...................................1, 21, 23

*Nelson v. Farmers Ins. Co. of Washington*
120 Wash. App. 1027, 2004 WL 341487 (Wash. App. Div. 2, Feb. 24, 2004) ....................12

*O'Hearn v. Les Schwab Warehouse Center*
2014 WL 6654207 (W.D. Wash., Nov. 24, 2014).......................................9

*Perez v. State Farm Mut. Auto. Ins. Co.*
2011 WL 5833636 (N.D. Cal., Nov. 15, 2011) ...........................................7

*Reed v. Whitacre*
147 Wash. App. 1007, 2008 WL 4635914
(Wash. App. Div. 2, Oct. 21, 2008)...........................................................29

*Sanchez v. Wal Mart Stores, Inc.*
2009 WL 1514435 (E.D. Cal., May 28, 2009) ...........................................20

*Sayan v. United Servs. Auto. Ass'n*
43 Wash. App. 148, 716 P.2d 895 (1986) .................................................22

*Schoeman v. New York Life Ins. Co.*
106 Wash.2d 855, 726 P.2d 1 (1986) .......................................................20

*Schweickert v. Hunts Point Ventures, Inc.*
2014 WL 6886630 (W.D. Wash., Dec. 4, 2014) ........................................7

*Shin v. Esurance Ins. Co.*
2009 WL 688586 (W.D. Wash., Mar. 13, 2009) ........................................7
///

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S      Page v
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

*Tavakoli v. Allstate Property and Cas. Ins. Co.*
2012 WL 6677766 (W.D. Wash., Dec. 21, 2012) .........................................................30

*Wal-Mart Stores, Inc. v. Dukes*
131 S. Ct. 2451, 180 L.Ed.2d 374 (2011)...........................................3, 9, 10, 11, 15

*Wang v. Chinese Daily News, Inc.*
709 F.3d 829 (9th Cir.), *superseded by*, 738 F.3d 538 (9th Cir. 2013) ....................3

*Warth v. Seldin*
422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)..............................................7

*Zinser v. Accufix Research Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001), *as amended* 273 F.3d 1266 (9th Cir. 2001) .............8


**Statutes and Rules**

RCW 4.22.005 ...........................................................................................................17

RCW 48.03.040 .........................................................................................................16

RCW 48.03.090 .........................................................................................................16

RCW 48.22.030(3)........................................................................................................1

FRCP 23 ......................................................................................................................9

FRCP 23(a) .....................................................................................................8, 15, 18

FRCP 23(a)(4) ...........................................................................................................18

FRCP 23(b) ................................................................................................................8

FRCP 23(b)(1) ...........................................................................................................8

FRCP 23(b)(2) ...........................................................................................................8

FRCP 23(b)(3) ...............................................................................................8, 21, 22


**Other Authorities**

Nagareda, R. A., *Class Certification in the Age of Aggregate Proof,*
84 N.Y.U. L. Rev. 97 (2009) .......................................................................................9

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

# I.  **INTRODUCTION**

Plaintiff Meyer seeks to certify a class of Defendants' insureds to recover "diminished value"[1] to accident vehicles meeting prescribed criteria, and to recover damages related to Defendants' claim handling conduct.  Plaintiff's motion rests mostly on *Moeller v. Farmers Ins. Co. of Washington*,[2] and other decisions generally arising in the context of denials by various other insurers based upon their respective Collision coverages.  Those decisions offer little help to Plaintiff where, if certain conditions are met, American Family Mutual Insurance Company ("AFM") acknowledges that its underinsured motorist coverage for property damage ("UIM PD") provides for payment of loss in value to a vehicle.

In UIM coverage, the insurer stands in the shoes of the uninsured/underinsured driver.  So, there are two aspects to Plaintiff's proposed class:  1) how AFM responds to claims for inherent physical damage,[3] and 2) claim handling issues.[4]  Plaintiff's motion focuses on the physical damage which is but part of the contractual damage issue.  His motion ignores the claims handling aspect.  Both issues are overwhelmed by individualized inquiries and are unsuited for a class action, as discussed in detail below.

---

[1] Defendants challenge the validity of Plaintiff's expert's regression analysis, and they will file a separate a motion asking this Court for an evidentiary hearing and to strike Dr. Siskin's opinions. The scope and estimate of the time required for such a hearing will depend, in part, upon Plaintiff's response(s) to the Defendants' experts.  *See* Declaration of John A. Bennett in Opposition to Plaintiff's Motion to Certify ("Bennett Dec"), February 27, 2014, Exhibits 31-33.  Plaintiff contends that the proposed class seeks only loss in market value attributable to "inherent" physical damage that remains following repair, not loss in market value attributable to the stigma an accident vehicle may suffer following the accident. Bennett Dec, Exhibit 6 at 2, ¶4.  For convenience, Defendants will refer to loss of market value, whether caused by inherent physical damage or stigma, as "DV."

[2] *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wash.2d 264, 271, 267 P.3d 998 (2011).

[3] To trigger any entitlement to coverage, physical damage to the vehicle must occur.  RCW 48.22.030(3); *Degenhart v. AIU Holdings, Inc.*, 2010 WL 4852200, 5 (W.D.Wash., Nov. 26, 2010) (not reported).

[4] Defendants will separately contest the merits of Plaintiff's claim handling cause of action. It is discussed here in light of the admitted fact that Meyer was aware of DV, and that he did not disclose his intent to make a DV claim until he joined this lawsuit.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S     Page 1
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

## II.  BACKGROUND

When this lawsuit was first filed, the sole named plaintiff was Jeff Butler ("Plaintiff Butler").  He sought to recover damages as an assignee of Christina Bower, and to represent a class of insureds, as Mr. Meyer now seeks to do.  Plaintiff Butler withdrew as a named plaintiff and dismissed his claims.  However, he claims to remain as an absent member of the proposed class.[5]  As the ascertainability of any proposed class is an issue, the circumstances of Butler's claim will be addressed briefly below.

The contractual duty to pay for DV does not specifically appear in the language of the insurance contract.  Plaintiff Meyer alleges "these insurance policies . . . obligated American Family to pay compensatory damage an Insured person is legally entitled to recover[ ] from the owner or operator of an underinsured motor vehicle . . . ."[6]  The purported class members allegedly "suffered damages as a result of American Family's[7] breach of its insuring agreement with its insureds and its violation of the Washington Administrative Code and, as a result its violation of the Washington Consumer Protection Act."[8]

Plaintiff sets aside a discussion of how AFM actually adjusts DV claims under the UIM PD coverage to portray liability for breach of contract as simply a battle of competing estimating formulas for physical damage.  Plaintiff Meyer tells this Court that "AmFam has a

///

---

[5] *See* Plaintiff Butler's Motion for Voluntary Dismissal Pursuant to FRCP 41(a)(2) and to Withdraw as Class Representative ("Butler Mot Dismiss"), November 3, 2014 at 1-2. Plaintiff Butler asked that the dismissal of his claims be without prejudice "so that he may recover the diminished value to which he is entitled . . . in this class action, as an absent class member." *Id.* at 3:13-16.

[6] Bennett Dec, Exhibit 2 at 2 ¶¶ 1.1, 1.2.

[7] The pleadings and motions filed on behalf of Plaintiff Butler (and, now, Plaintiff Meyer) refer to the two defendants jointly as "American Family," or as "AmFam." *See, e.g.*, Plaintiff's Motion for Class Certification ("Pl's Mot"), December 15, 2014 at 1, 2.

[8] Bennett Dec, Exhibit 2 at 2, ¶ 1.1.

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

well established and computerized process to determine the amount of the loss"[9] that he

identifies as "Autosource."[10]  Plaintiff Meyer claims,

> liability will be established through common evidence of
> AmFam uniform policy forms and uniform state wide
> diminished value avoidance policies.  Damages can be
> calculated through the use of regression analyses *without the*
> *need for individualized inquiries* to determine Class Members'
> entitlement to relief or the amount of relief.[11]

Sometime in 2010, AFM did begin using a vendor's software program as one measure

of DV.[12]  However, DV claims have never been bound by the outcome of a software

program.  AFM has no special rules or guidelines for adjusting DV claims in the State of

Washington.[13]  Nor were the adjusters required to rely upon a particular method, source, or

type of information or a specified set of guidelines.   AFM adjusters have used an

individualized approach that has varied over the proposed class period.  The property damage

adjusters exercise a considerable amount of discretion in making judgment calls when

adjusting individual diminished value claims under the UIM PD coverage.[14]

DV adjustment decisions are not the result of the application of a common policy or

method.  Plaintiff Meyer's proposed class lacks commonality.  Plaintiff Meyer does not have

---

[9] Pl's Mot at 2:20-21.

[10] Autosource is a diminished value estimating program provided by Audatex, a third party vendor that provides a general auto damage estimating program; Pl's Mot at 6:8-17.

[11] Pl's Mot at 21.  Emphasis supplied.  "In *Wal–Mart*, the Supreme Court disapproved what it called 'Trial by Formula,' wherein damages are determined for a sample set of class members and then applied by extrapolation to the rest of the class 'without further individualized proceedings.'"  *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829 (9th Cir. 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2561, 180 L.Ed 2d 374 (2011) and *superseded by* 738 F.3d 538 (9th Cir. 2013)).

[12] Bennett Dec, Exhibit 3 at 2; 19-20; 24:1-11.

[13] Bennett Dec, Exhibit 4 at 2.  Indeed, Plaintiff Meyer tries to make *the lack of evidence of a common practice* into "uniform" wrongful conduct.  *See* Bennett Dec, Exhibit 2 at 5; 6.

[14] Bennett Dec, Exhibit 3 at 13:9-23; 15:16-17:14; 24:20-26:4.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S       Page 3
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1  claims typical of the proposed class.  He has framed and limited the claims in an effort to

2  prompt certification, however, the evidence from his own experts shows that doing so is

3  contrary to the interests of the other members of the proposed class.  Plaintiff Meyer has

4  made strategic decisions to pursue his own recovery.  He is not an adequate representative.

5       Individualized adjusting issues predominate, including the application of policy

6  provisions that do not apply to all members of the class.  A class is not a superior means of

7  addressing DV disputes where the defendants do pay such claims, when supported by

8  evidence and as affected by other UIM provisions in the insurance policies.  Plaintiff

9  Meyer's motion asking that this litigation proceed as a class action should be denied.

10                          III.  **STATEMENT OF FACTS**

11  **A.**     **Plaintiff Meyer**

12       AFM issued an auto insurance policy to Plaintiff Bryce Meyer.[15]  Plaintiff Meyer

13  borrowed to purchase a 2011 Ford GT Mustang (the "Mustang").[16]  He customized the

14  Mustang,[17] and unsuccessfully tried to sell it.  He removed some, but not all, of the custom

15  parts.[18] On April 14, 2014, the car was damaged while parked at Meyer's workplace.  There

16  were no witnesses.  He gave AFM notice of the loss.  The incident was classified as a "hit

17  and run."[19]

18

19

_____

[15] *See* Bennett Dec, Exhibit 5 at 2.  Plaintiffs responded "none" **w**hen asked to produce a
20  copy of "any policies that provide UIM PD coverage *issued by American Standard*" to either
    Plaintiff Meyer or Christina Bower.  Bennett Dec, Exhibit 6 at 7:17-20.
21
[16] Bennett Dec, Exhibit 7 at 14.  The lienholder is the Alaska Federal Credit Union of
22  Anchorage, Alaska.  Bennett Dec, Exhibit 5 at 3**;** Exhibit 7 at 21.

23  [17] Bennett Dec, Exhibit 7 at 15:21-18:25.

24  [18] Mr. Meyer testified that he "returned it all to stock" before the vehicle was damaged, but
    some custom parts and new tires remained on the vehicle.  Bennett Dec, Exhibit 7 at 19:13-
25  20:12; 22:18-22.

26  [19] Bennett Dec, Exhibit 7 at 7; 8.

A family friend called Meyer and told him to make a claim for DV.[20]  Meyer had the car repaired at Barrett's Collision Center ("Barrett's").[21]  He was dissatisfied with the repair. Prompted by dissatisfaction "with the Barrett's repair and . . . this issue [he had] about diminished value," Mr. Meyer contacted an attorney, Stephen Hansen, and a public adjuster, Darrell "Mike" Harber. [22]

On July 5, 2014, Mr. Meyer's Mustang was damaged in a second incident.[23]  The collision damaged some of the same areas and parts of the Mustang that were previously damaged.  On July 28, 2014, AFM learned that a new plaintiff would be added, "[b]ryce meyer."[24] AFM made arrangements to inspect the Mustang.[25]  AFM determined there had been some diminished value resulting from the April 14, 2014 accident,[26] and tendered a $1,289.99 check as payment for diminished value.[27]  Mr. Meyer was asked to supply information about the amount of DV loss he claimed.  He failed to cooperate.[28]

///

---

[20] Bennett Dec, Exhibit 7 at 2.

[21] Barrett's is an auto repair shop in American Family Mutual's CRP program.  Mr. Meyer knew that he could take his vehicle to the repair shop of his choice, and that Barrett's work was guaranteed.  Bennett Dec, Exhibit 7 at 5; 12:25-13:11.

[22] Bennett Dec, Exhibit 7 at 4; 6; 9:17-10:4; 11; 26:25-27:3; 29.

[23] Bennett Dec, Exhibit 7 at 24.

[24] Bennett Dec, Exhibit 8 at 1; 2; 9; 10; Exhibit 7 at 3.

[25] Bennett Dec, Exhibit 10 at 2; 3:13-17; 4:13-5:2; 17:3-18:15.

[26] Bennett Dec, Exhibit 10 at 19:21-20:15.

[27] Bennett Dec, Exhibit 7 at 28; Exhibit 11 at 1, 2.

[28] Upon giving notice of a claim, an insured has a duty to cooperate, including supplying records concerning the vehicle.  Bennett Dec, Exhibit 5 at 4. Plaintiff Meyer alleges that "[a]ll members of the proposed class have fully complied with all pertinent policy provisions to receive payment under their policies . . . ." Bennett Dec, Exhibit 2 at 7, ¶ 5.2; Exhibit 12 at 1, 2.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S     Page 5
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Meyer and AFM disagreed on issues related to Barrett's repairs.  AFM prepared revised estimates, and paid an additional $1,397.95.[29]  Mr. Meyer decided not to seek damages in this lawsuit for the allegedly repairable, but unrepaired (or improperly repaired) damage.  At Meyer's request that aspect of his claim was addressed by arbitration, as discussed further below.[30]

AFM made a DV payment to Meyer.  Meyer has never provided information to AFM to contest the amount paid, other than in the form of his motion for class certification through the Siskin declaration, and in the deposition of one of Plaintiff Meyer's DV experts, Darrell Harber.  The Siskin formula and Mr. Harber's DV assessments are wildly different.  The only thing they have in common is that they exceed AFM's assessment of the DV loss.

**B.**     **Christina Bower/Plaintiff Butler**

Ms. Bower reported to AFM that the left rear corner of her 2011 Mini Cooper was damaged in a July 4, 2011 accident, a "hit and run."[31]  AFM did an initial inspection, and Ms. Bower selected Haury's Collision Repair ("Haury's") to do the repair work.  AFM paid the full amount of the invoice.  Plaintiff Butler is a part owner of Haury's, and he also owns Collision Consulting of Washington.[32]  Ms. Bower made a DV claim relying on a Collision Consulting report.  After receiving assurances from Haury's that "the vehicle would be returned to pre-loss condition,"[33] the adjuster, Lisa McNally, considered the repair estimate, round-tabled the claim with her supervisor, and determined there was no evidence that the Mini Cooper had sustained a DV loss.  Ms. Bower did not respond to requests for

---

[29] Bennett Dec, Exhibit 13 at 1.

[30] Bennett Dec, Exhibit 14 at 1.

[31] Bennett Dec, Exhibit 15 at 1, ¶ 2.

[32] Bennett Dec, Exhibit 6 at 5:2-9.

[33] Bennett Dec, Exhibit 4 at 22:18-19, 22-23; 23:3-7.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

information that might support reconsideration.  During the proposed class period, Bower

submitted three separate claims for repairs to her 2011 Mini Cooper from three separate

accidents to three insurers.  Ms. Bower subsequently made an assignment to Mr. Butler. [34]

## IV.  MEYER LACKS STANDING TO BRING CLAIMS AGAINST AMERICAN STANDARD

Plaintiff Meyer alleges the two defendants are "juridically linked, so that Plaintiffs

can represent insureds of both American Family [insurance companies] as it relates to their

diminished value losses." [35]  Plaintiff offers no evidence or argument to support these

assertions.  "[C]onstitutional standing requirements [must be] satisfied before proceeding to

the merits." [36]  To establish Article III standing, a plaintiff must show that he or she (1)

suffered an injury in fact that is (2) fairly traceable to the alleged conduct of the defendant,

and that is (3) likely to be redressed by a favorable decision.[37]  Plaintiff Meyer did not have

an auto insurance contract with American Standard.[38]  Plaintiff Meyer has no standing to

bring these claims against American Standard in his own name, or on behalf of others.[39]

---

[34]  The alleged assignment makes no reference to a specific date of loss, a claim number, or even the name of any insurance company.  Bennett Dec, Exhibit 17.

[35]  Bennett Dec, Exhibit 2 at 4, ¶¶ 2.6, 2.7.

[36]  *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

[37]  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

[38]  Bennett Dec, Exhibit 6 at 7:17-20.  Plaintiff Butler is simply identified as "the beneficiary of an assignment given to him by his customer, Christina Bower, who was insured by [AFM]."  Bennett Dec, Exhibit 1 at 4:21-26; Exhibit 2 at 3:13-19.

[39]  *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001); *Schweickert v. Hunts Point Ventures, Inc.,* 2014 WL 6886630, 4 (W.D. Wash., Dec. 4, 2014) (granting judgment on the pleadings and dismissing plaintiff's breach of contract claim as a matter of law where no contract was alleged between the plaintiff and the movants).  A plaintiff who has no cause of action against a defendant "can not [sic] 'fairly and adequately protect the interests' of those who do have such causes of action." *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 5833636 at 3, 4 (N.D. Cal., Nov. 15, 2011); *Shin v. Esurance Ins. Co.*, 2009 WL 688586,

---

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

## V. <u>PLAINTIFF MEYER FAILS TO CARRY HIS BURDEN AS THE PARTY MOVING TO CERTIFY A CLASS.</u>

If the class is ascertainable and all four prerequisites of Rule 23(a) are satisfied, the court must also find that plaintiffs have "satisf[ied] through evidentiary proof" at least one of the three subsections of Rule 23(b).[40]  Plaintiff Meyer's motion invokes Rule 23(b)(3).[41] Rule 23(b)(3) requires a showing that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**A.**   <u>**Defendants do not dispute that Rule 23(a)'s numerosity requirement would likely be satisfied.**</u>

The numerosity requirement would likely be satisfied based upon the numbers of UIM PD claims made in the State of Washington under AFM policies during the proposed class period.

**B.**   <u>**Plaintiff Meyer fails to carry his burden under Rule 23(a)'s commonality requirement.**</u>

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common

///

---

5 (W.D. Wash., Mar. 13, 2009) (Leighton, J.); *Gustavson v. Wrigley Sales Company*, 961 F. Supp. 2d 1100, 1133 (N.D. Cal. 2013) (dismissing allegations that the "[d]efendants were juridically linked' as "precisely the sort of 'formulaic recitation[s] of the elements of a cause of action,' that the Supreme Court has warned are insufficient.");  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1001, n. 7 (9th Cir. 2006); *Hovenkotter v. Safeco Corp.*, 2009 WL 6698629, 4, 5 (W.D. Wash., Aug. 3, 2009); *Akaosugi v. Benihana Nat. Corp.*, 2011 WL 5444265, 2 (N.D. Cal., Nov. 9, 2011).

[40] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by*, 273 F.3d 1266 (9th Cir. 2001).

[41] Pl's Mot at 17.  While the First Amended Complaint includes a request for declaratory and injunctive relief in the prayer, Meyer makes no showing to attempt to satisfy either Rule 23(b)(1) or (2).

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1  *answers* apt to drive the resolution of the litigation."[42]  Not every issue in the case must be

2  common to all class members, however, the relevance of the common questions to the factual

3  and legal issues at the core of the purported class claims is that *they must be applicable in the*

4  *same manner to every member of the class* and sufficiently important that those common

5  issues of law or fact may be said to be "apt to drive the resolution of the litigation."[43]

6    "Commonality, within the meaning of Rule 23, requires plaintiff to demonstrate that

7  the claims of all class members depend on 'a common contention' of such nature as 'is

8  capable of classwide resolution.' . . . The test is whether the determination of the truth or

9  falsity of such common contention 'will resolve an issue that is central to the validity of each

10  one of the claims in one stroke.'"[44]  Conversely, "'[d]issimilarities within the proposed class

11  are what have the potential to impede the generation of common answers.'"[45]

12    In *Wal-Mart*, the plaintiffs' challenged what they alleged were discriminatory

13  employment decisions based on gender in violation of Title VII of the Civil Rights act of

14  1964, where Wal-Mart's publicly announced policy forbade discrimination.  Wal-Mart

15  permitted store managers to exercise discretion and to apply their own subjective criteria

16  when selecting candidates for promotion.  Commonality requires a plaintiff to demonstrate

17  that class members have suffered the same injury, but, as the Court explained,

18     [t]his does not mean merely that they have all suffered a
   violation of the same provision of law.  Title VII, for example,

19     can be violated in many ways – by intentional discrimination, or
   by hiring and promotion criteria that result in disparate impact,

20     and by the use of these practices on the part of many different
   superiors in a single company.  Quite obviously, the mere claim

21     by employees of the same company that they have suffered a

22  [42] *Wal-Mart*, *supra*, 131 S. Ct. at 2551.

23  [43] *Id.*

24  [44] *O'Hearn v. Les Schwab Warehouse Center*, 2014 WL 6654207, 4 (W.D. Wash., Nov. 24,
25  2014) (quoting *Wal-Mart*, *supra*, 131 S. Ct. at 2551).

26  [45] *Wal-Mart*, *supra*, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, "Class Certification in
the Age of Aggregate Proof," N.Y.U.L. Rev. 97, 103 (2009)).

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S Page 9
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

> Title VII injury, or even a disparate impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.[46]

The Supreme Court in *Wal-Mart* looked for "some glue holding the alleged reasons for all those decisions together," and concluded it would be impossible to say that examination of all the class members' claims for relief" would produce "a common answer to the crucial question [']why I was disfavored.[']"  "In order to show that examination of the class claims would 'produce a common answer to the crucial question' of why each employee was disfavored, the plaintiffs needed to present 'significant proof' that Wal–Mart 'operated under a general policy of discrimination.'"[47]  Therefore, the Court held that granting certification of a class would thwart the purpose of the commonality requirement where "demonstrating the invalidity of one manager's use of discretion [would] do nothing to demonstrate the invalidity of another's."[48]

Here, if presented with a claim for diminished value loss under the UIM PD coverage, AFM's practice is to pay substantiated diminished value claims.[49]  Yet in the attempt to meet his burden, Plaintiff Meyer portrays UIM claims adjustment process as "an automated and computerized diminished value program called 'Autosource.'"[50]  Meyer claims that proceeding as a class is allegedly appropriate because "American Family's conduct has been uniform throughout the Class Period, and it has impacted all members of the proposed Class in a common and similar manner as to how it affected [the named] Plaintiffs."[51]

---

[46] *Wal-Mart*, *supra*, 131 S. Ct. at 2551.

[47] *Id*. at 2552-53.

[48] *Id*. at 2252, 2254.

[49] Bennett Dec, Exhibit 3 at 14:5-24.

[50] Pl's Mot at 6.

[51] Bennett Dec, Exhibit 2 at 6:15-7:1.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Just as alleging that the employees suffered a Title VII violation was insufficient to meet the commonality requirement in *Wal-Mart*, alleging that all of the policyholders in the proposed class were "adversely affected" by an alleged breach of a common provision of auto insurance contracts and by alleged "diminished value avoidance policies," does not give any cause to believe that all of the claims in this proposed class can be fairly or manageably litigated in one proceeding.

In *Heaphy v. State Farm Mut. Auto. Ins. Co.*, 117 Wash. App. 438, 72 P.3d 220 (2003), *rev. denied*, 150 Wash.2d 1037, 84 P.3d 1230 (2004) (Table), the defendant auto insurance company paid the cost to repair its insured's vehicle, but disputed her claim that she was owed additional DV damage under its (UIM) coverage.[52]  State Farm conceded that the UIM endorsement provided coverage for diminished value damages, but denied that the insured had adequately shown that the proposed diminished value damages were reasonable and necessary.[53]  State Farm asked the insured to provide an estimate or a detailed list of each item that was incorrectly repaired or not repaired at all.  Rather than cooperate, the insured filed a class action lawsuit alleging that State Farm "did not pay claims for diminished value and did not inform its insureds that they had a right to diminished value payments."[54]  When State Farm filed a motion to compel arbitration, the trial court held that State Farm had denied coverage, and denied the motion.[55]  The Washington Court of Appeals

///

---

[52] *Heaphy*, 117 Wash. App. at 440.

[53] *Id*. at 443.

[54] *Id*. at 440-41.  The complaint contained allegations about claims handling similar to the allegations in this lawsuit.  *Heaphy v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 1950244, 1 (W.D. Wash. Aug. 15, 2005).

[55] *Heaphy*, 117 Wash. App. at 440.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 11
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   ruled that the dispute was arbitrable, and reversed[56] on the ground that "[this was] not a

2   denial of coverage . . . [r]ather, the question is to what extent, if any, was [the insured's]

3   vehicle diminished in value due to the accident with the uninsured motorist.  This is a factual

4   question, not a coverage question . . . ."[57]

5         In the proceedings following the arbitration and removal, a new named plaintiff,

6   Childs, was added.  Childs asserted diminished value claims on behalf of a class.[58]  Again,

7   this Court noted that "[w]hile State Farm was arguably on notice that Heaphy disputes its

8   handling of UIM diminution in value losses," the factual context of Mr. Childs' claims were

9   unique to him, and "the factual context of each plaintiff's claims is different."[59]  *Heaphy* is

10  not dispositive, but it is illustrative of the distinct, individualized issues in a claim

11  measurement dispute. [60]  This case presents a claim measurement dispute.[61]  "[T]he issue is a

12  factual one:  does the evidence show that [the insured's] vehicle suffered diminished value

13  damages?  If the answer is yes, [the insurance company] has conceded that its policy covers

14  these damages.  Thus [the insured] has no question of law in common with others.  And [the

---

16  [56] The existence of physical damage, including DV, presented individual issues of fact, not
    common coverage questions.  *Id.* at 445.

17  [57] *Id.* at 443.

18

19  [58] In a subsequent proceeding following the arbitration, this Court noted that the Washington
    Court of Appeals rejected Heaphy's argument that her claims were amenable to class
20  treatment.  See *Heaphy*, *supra*, 2005 WL 1950244 at 3, 4.

21  [59] *Id.*

    [60] *Id.* at 4.
22

23  [61] "Coverage issues concern the contractual duty to pay, who is the insured, the type of risk,
    and whether there is an insurance contract at all. . . . Claim disputes relate to factual issues,
24  *e.g.*, factual questions of liability, injuries, and damages . . . ."  *Nelson v. Farmers Ins. Co. of
    Washington*, 120 Wash. App. 1027, 2004 WL 341487, 2 (Wash. App. Div. 2, Feb. 24, 2004).
25  Some appellate courts have declined to follow *Heaphy* because certification of a class had
    not been sought at the time of the ruling on arbitrability.  See, *e.g.*, *Laughlin v. Allstate Ins.
26  Co.*, 130 Wash. App. 1018, 2005 WL 2981685, 1 (Wash. App. Div. 2, Nov. 8, 2005), *rev.
    denied*, 157 Wash.2d 1018, 142 P.3d 607 (2006) (unpublished).

---

insured] has not shown that other class members share common issues of fact."[62]  This issue is addressed further below.

### 1.  The proposed class period shifts and straddles the defendants' use of AutoSource.

"As a threshold matter, the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. . . . 'the class sought to be represented must be adequately defined and clearly ascertainable.'"[63]  Plaintiff Meyer asks for certification of a single class by stating that those who were involved in "accidents occurring before March 6, 2008" are excluded from the class.  However, in the same pleading, the membership is defined as those "whose claims were adjusted on or after March 6, 2010;" and, later still, those whose claims were adjusted after December 16, 2009."[64]

Plaintiff Meyer argues commonality is satisfied by the use of the Autosource tool. Autosource was not used at all during a significant part of the class period.  "Practices that do not apply during the entire class period across the class cannot provide a common question tying the class together."[65]

### 2.  The payment of DV, and decisions regarding the amounts paid, depended upon a wide variety of factors.

According to Plaintiff Meyer, this case will likely involve "determining if the method used by AmFam or the proposed regression analysis prepared by Plaintiff's expert Dr. Bernard Siskin best reflects the actual [diminished value] of members of the proposed

---

[62] *Heaphy*, *supra*, 117 Wash. App. at 447-48.

[63] *Daniel F. v. Blue Shield of California*, 2014 WL 3907150, 3 (N.D. Cal. Aug. 11, 2014); See also *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 636 (W.D. Wash. 2011).

[64] Bennett Dec, Exhibit 2 at 7:21-22; 9:11-12; 10:21-22.

[65] *Dukes v. Wal-Mart Stores*, 964 F. Supp. 2d 1115, 1126 (N.D. Cal. 2013).

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Class."[66]   There was no uniform, centrally-established formula or practice for adjustment of diminished value claims during the proposed class period.[67]   American Family Mutual employed other methods to assess diminished value loss during the class period both prior to the introduction of AutoSource, and thereafter.

For example, a spreadsheet entitled "Diminished Value Schedule"[68] that provided percentages (ranging from 1% to 40%) of the actual cash value (ACV) of the vehicle and the estimated cost of repairs was "one of the things" used to guide adjusters in arriving at "which number seemed appropriate in that particular case" to pay for diminished value.[69]   Once introduced, the results from the AutoSource program did not determine the amount of DV.[70]

Since December 2009 or early 2010, AFM adjusters sent a letter[71] to insureds with a checklist of information to seek in assessing DV.[72]   Information was sought from the owner, including the owner's description of the damage and information about prior damage,[73] and copies of repair invoices.  Adjusters also considered information in NADA guides,[74]

///

///

---

[66] Pl's Mot at 2:26-28.

[67] Bennett Dec, Exhibit 10 at 6:10-13; Exhibit 3 at 13:9-23.

[68] Bennett Dec, Exhibit 3 at 4:16-21; Exhibit 29.

[69] Bennett Dec, Exhibit 3 at 5:5-16; 6:3-6, 19-25; 7:1-5; 8:5-21, 23; 9:1-10:2; 12:13-13:8.

[70] Bennett Dec, Exhibit 3 at 15:16-20; Bennett Dec, Exhibit 10 at 7:3-15; Bennett Dec, Exhibit 4 at 11:3-22.

[71] Bennett Dec, Exhibit 18.

[72] Bennett Dec, Exhibit 4 at 3:19-4:1-12; 12:10-18; Exhibit 19**;** Pl's Mot at 8]

[73] Bennett Dec, Exhibit 10 at 7:16-23; 13:4-7; 14:15-19**.**

[74] Bennett Dec, Exhibit 3 at 3:11-14.

maintenance records,[75] searches of the Insurance Service Office (ISO) database,[76] records of post-accident sales;[77] photographs and repair estimates;[78] dealership evaluations of the trade-in value;[79] the results of a value rating questionnaire provided by Kelley Blue Book, that includes questions concerning the impact of prior repairs on the valuation rating;[80] owner-supplied appraisals;[81] and other value rating guides. [82]  Decisions on DV claims are and have been the result of a collaborative process.[83]  Proceeding as a class will not yield common answers regarding who was owed DV, or how much, or how any particular claim was handled as to DV.

**C.**      **Plaintiff Meyer fails to carry his burden under Rule 23(a)'s typicality requirement.**

Typicality has been interpreted to mean that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[84] Plaintiff Meyer alleges that the questions of law and fact common to all members of the proposed Class include "[w]hether American Family committed consumer fraud and acted in

---

[75] Bennett Dec, Exhibit 4 at 13:11-19; 14:12-22; 15:6-21; 16:2-11; 17:21-18:13.

[76] Bennett Dec, Exhibit 3 at 18:3-9; Bennett Dec, Exhibit 4 at 6:4-15; 8:17-22; Exhibit 10 at 12:9-22.

[77] Bennett Dec, Exhibit 4 at 9:8-15.

[78] Bennett Dec, Exhibit 4 at 19:2-17.

[79] Bennett Dec, Exhibit 10 at 9:21-10:23; 11:10-23.

[80] Bennett Dec, Exhibit 10 at 7:24-8:16.

[81] Bennett Dec, Exhibit 4 at 10:17-20.

[82] Bennett Dec, Exhibit 10 at 9:1-13.

[83] Bennett Dec, Exhibit 4 at 10:21-23**.**

[84] *Wal-Mart*, *supra*, 131 S. Ct. at 2550.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S       Page 15
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   bad faith thereby violating RCW 48.03.040 and .090" and by *failing to pay* DV *losses*.[85]

2   "The test for typicality 'is whether other members have the same or similar injury, whether

3   the action is based on conduct which is not unique to the named plaintiffs, and whether other

4   class members have been injured by the same course of conduct."[86]

5           Plaintiff Meyer's claim is not typical of those of all of the members of the proposed

6   class.  Plaintiff Meyer knew he could assert a DV element of loss, and he received a payment

7   for diminished value.  Other policyholders did not.  Plaintiff Meyer alleges that the

8   defendants failed to disclose coverage for diminished value.  He argues that he is "*one of the*

9   *few* AmFam insureds . . . knowledgeable enough to even mention [diminished value]" in

10  making a claim under the policy.[87]

11          Typicality requires that a class representative "have the incentive to prove all the

12  elements of the cause of action which would be presented by the individual members of the

13  class were they initiating individualized actions."[88]  Mr. Meyer's claim was adjusted as a hit-

14  and-run.  Where the damages result from a hit-and-run or a "phantom vehicle" accident, the

15  claim is adjusted as though the other driver was at fault and uninsured.[89]  In other types of

16  accidents, however, the comparative fault of some of the members in the class proposed here

17  ///

18  ///

19  ///

20  ───────────────────

21  [85] Bennett Dec, Exhibit 2 at 8:3-6.  Emphasis supplied.

22  [86] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

23  [87] Pl's Mot at 8.  Emphasis supplied;  Bennett Dec, Exhibit 7 at 27:4-14.

24  [88] *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D. N.Y. 1997).

25  [89] However, there may be real party in interest issues due to the loss payable provision.
    Bennett Dec, Exhibit 5 at 5, ¶ G, sub¶ 3.a.  Also, Mr. Meyer provided his lender with a
    security interest in . . . the vehicle and all parts or goods put on it; [and] *all money or goods*
26  *received (proceeds) for the vehicle.*"  Bennett Dec, Exhibit 20 at 3, ¶ 2, sub¶¶ a, c, d.

1   may affect what an insured is 'entitled to recover' from an uninsured or an underinsured

2   motorist. [90]

3        Also, there are different joinder and notice issues within the proposed class where the

4   terms of the UIM endorsement state, in part, as follows:  "If any suit is brought by **you** to

5   determine liability or damages, the owner or operator of the **underinsured motor vehicle**

6   must be made a defendant and **you** must notify **us** of the suit."[91]  In an earlier attempt by a

7   Washington resident to bring a nationwide DV class against these defendants in Wisconsin,[92]

8   AFM raised defenses, including this notice and joinder issue.  Judge Crab found that joining

9   the tortfeasor was a condition precedent to plaintiff's ability to sue under the contract.  The

10   matter was thereafter compromised and dismissed, without class certification being reached.

11        "[C]lass certification is inappropriate where a putative class representative is subject

12   to unique defenses which threaten to become the focus of the litigation."[93]  Ms. Bower gave

13   American Family Mutual notice of her DV claim.  Plaintiff Meyer did not.[94]  When asked for

14   ///

15   ///

16   ///

---

[90] Washington's application of 'pure' comparative fault to negligence actions means that "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for any injury attributable to the claimant's contributory fault."  *Hai v. STL Intern., Inc.*, 180 Wash. App. 1026, 2014 WL 1494107, 4 (Wash. App. Div. 2 Apr. 15, 2014); RCW 4.22.005.

[91] Bennett Dec, Exhibit 5 at 7, ¶ C, sub¶ 3.

[92] *Maryanouskiy v. American Family Mutual Ins. Co. and Sharon Wimpress*, U.S. District Court for the Western District of Wisconsin, 11-cv-106-bbc.

[93] *Hanon v. Dataproducts Corp.*, *supra*, 976 F.2d at 508; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

[94] The Mustang had been damaged in a second accident by the time Plaintiff Meyer gave notice of his DV claim.  His diminished value expert, Mr. Harber, acknowledged that multiple accidents "make[ ] it a little more difficult to separate out what's – you know, who's responsible for what, *but it isn't really that unusual*."  Bennett Dec, Exhibit 9 at 3.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 17
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   any evidence in support of payment of a different amount for DV, Mr. Meyer did not

2   cooperate.[95]

3   **D.      Plaintiff Meyer fails to carry his burden under Rule 23(a)'s adequacy requirement.**

4

5         Rule 23(a)(4) requires Plaintiff Meyer to show that he "will fairly and adequately

6   protect the interests of the class."  The court must consider whether the proposed class

7   representative has "any conflicts of interest with other class members" and whether the

8   proposed class representative will "prosecute the action vigorously on behalf of the class."[96]

9         Meyer has conflicts of interest with other members of the proposed class.  Here,

10  Plaintiff Meyer insisted that Barrett's did not completely or properly repair the damage to the

11  Mustang from the April 14, 2014 incident.  According to Plaintiff's DV expert, this type of

12  damage may be present "beyond . . . [the] collision-related diminished value" property

13  damage caused by a collision with the uninsured motorist where that damage is left

14  "unrepaired," and "require[d] that the vehicle either be estimated, or reestimated, so that the

15  sum necessary to repair the vehicle to industry standards can be determined, or it can be

16  determined that the vehicle is (or should be) a total loss."[97]

17        Individual vehicle inspections would be required to determine the numbers of other

18  members of the proposed class who have similar repair-related claims under the UIM PD

19  coverage.  The defendants' alleged liability to the insureds is for unrepaired physical damage

20  ///

21  ///

22

23  [95] Bennett Dec, Exhibit 12 at 2.  Ms. Bower also ignored compliance with a request for her
    cooperation in a request to support her DV claim.  Bennett Dec, Exhibit 16.

24

25  [96] *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012); *Hanlon v.
    Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

26  [97] Bennett Dec, Exhibit 22 at 3, n. 1.

1   or repair work that failed to restore the vehicles to their pre-accident condition.[98]

2   Distinguishing between diminished value damages and unrepaired but repairable damages

3   raises "[t]he question of whether the damaged property is capable of restoration, or has been

4   restored, to substantially the same value and condition as it had before the accident is a

5   question of fact to be determined by the jury or factfinder."[99]

6          Meyer decided not to pursue any such claims in this lawsuit on behalf of the other,

7   unnamed members of the class.[100]  Instead, Mr. Meyer's public adjuster/expert, Mr. Harber,

8   invoked "appraisal" (the contractual dispute resolution method under the UIM coverage is

9   arbitration).  Plaintiff Meyer elected to pursue damages for his claim arising out of the

10  unrepaired physical damage to the Mustang sustained in the same accident as the alleged

11  diminished value damage, but in a separate proceeding, and in a separate forum.[101]

12         Rule 23(a)(4) requires that the representative parties will fairly and adequately protect

13  the interests of the prospective class because any judgment conclusively determines the

14  rights of absent class members.[102]  A plaintiff's "'strategic claim-splitting decision creates a

---

[98] "The restoration of a covered auto to its pre-loss condition requires that an insured be compensated for all physical damage incurred, to include, for example, unrepaired dents, bends or stress to the vehicle's structure, and damage to the function or appearance of the vehicle." *Degenhart v. AIU Holdings, Inc.*, *supra*, 2010 WL 4852200 at 5.  Claims based on allegedly unrepaired damages or improperly performed repair work interject factual issues related to the quality of the work in individual instances in addition to the potential of raising different legal grounds (such as warranties of the repair shop's work) for liability.  Bennett Dec, Exhibit 4 at 5:3-12; 7:15-23.

[99] *Government Employees Ins. Co. v. Bloodworth*, 2007 WL 1966022, 42 (Tenn. App., June 29, 2007).  "[T]he plaintiff must prove that the property is not capable of repair that will substantially restore its condition, appearance, and value or that the repairs made did not substantially restore them."  *Id.* at 41.

[100] Bennett Dec, Exhibit 23 at 2.

[101] "[C]laim splitting – is precluded in Washington." *Ensley v. Pitcher*, 152 Wash. App. 891, 898, 222 P.3d 99 (2009), *rev. denied*, 168 Wash.2d 1028, 230 P.3d 1060 (2010); *Berschauer Phillips Const. Co. v. Mutual of Enumclaw Ins. Co.*, 174 Wash. App. 1068, 2013 WL 1901071, 2 (Wash. App. Div. 1, May 6, 2013).

[102] *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968).

---

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 19
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

conflict between Plaintiff's interests and those of the putative class, and renders Plaintiff an inadequate class representative.'"[103]   When claim splitting occurs in the context of a class that seeks monetary damages, "concerns about preclusion are much more significant," and courts "have refused to certify classes based on conflicts of interest between the named plaintiff and the absent class members."[104]   Failing to seek full damages suggests the individual seeking to be named as the representative of a class is an inadequate representative of the class—sacrificing claims that unnamed class members are entitled to expect the named representative will diligently prosecute those claims on their behalf.   Plaintiff Meyer's decision puts members of the class at risk of having similar damage claims foreclosed.

Also, absent members of the class are adversely affected by what appears to be an election by Mr. Meyer not to pursue amounts in damages that the other members of the class might choose to seek if they were in control of the litigation.   Depending upon which of Dr. Siskin's opinions regarding Plaintiff Meyer's loss of value is selected, Mr. Harber's $11,200 assessment of Plaintiff Meyer's Mustang diminished value loss[105] is nearly double $5,473.21 (95.57%) or more than double, $5,858.39 (109.67%), the results of applying Dr. Siskin's formula selected to advance presentation of these claims as a class.   For the

///

///

///

---

[103] *Fosmire ,supra*, 277 F.R.D. at 634 (denial of certification of a diminished value class, and quoting *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, 3 (E.D. Cal., May 28, 2009), where plaintiff's counsel chose to limit the class claims to economic injury and not to pursue personal injury claims on behalf of class members).

[104] *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012 WL 273883, 3, n. 5 (N.D. Cal., Jan. 30, 2012) (*dicta*); *Schoeman v. New York Life Ins. Co.*, 106 Wash.2d 855, 859, 726 P.2d 1 (1986); *Landry v. Luscher*, 95 Wash. App. 779, 782, 976 P.2d 1274, *rev. denied*, 139 Wash.2d 1006, 989 P.2d 1140 (1999).

[105] Bennett Dec, Exhibit 9 at 11:20-25; Exhibit 24 at 2.

---

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1  Bower vehicle, Dr. Siskin's method reduces Collision Consulting's estimate of Ms. Bower's

2  DV loss by approximately $3,000 (77%).[106]

3  **E.     Plaintiff Meyer fails to carry his burden under Rule 23(b)(3)'s requirements**

4      Plaintiff Meyer claims the common questions that "unquestionably predominate" are:

5              whether AmFam established a common course of conduct
               designed to avoid paying DV losses it was obligated to pay
6              under the standardized language of AmFam's form insurance
               policies and whether it fairly and accurately paid those claims it
7              was presented. [107]

8      Plaintiff Meyer tells this Court that his expert, Dr. Siskin, "will be able to calculate

9  the amount of diminished value . . . owed [to] those insureds within the Class both Class-

10  wide **and** for individuals within the Class" by employing his regression analysis, a "sampling

11  from the Class vehicles," and "building upon his work in *Moeller*" which relies upon what is

12  now a 13-14 year old database based upon surveys of cars sold at auto auctions to "isolate

13  the effect of DV on the total value of the vehicle."[108]   Defendants challenge Dr. Siskin's

14  regression analysis and will soon file an ER 702 motion to exclude the testimony.[109]

15      "Considering whether 'questions of law or fact common to class members

16  predominate' begins, of course, with the elements of the underlying cause of action."[110]   The

---

17  [106] Bennett Dec, Exhibit 27 at 6:4-22.  The Collision Consulting report offers the opinion that
18  the DV loss to Ms. Bower's Mini Cooper was $4,204.  Bennett Dec, Exhibit 15 at 1, ¶¶ 1-2;
    2, ¶ 5; Exhibit 25 at 2, 3.

19
    [107] Pl's Mot at 18.  Emphasis supplied.  Plaintiff Meyer represents that "the *amount* of
20  [Plaintiff Meyer's and Class Member's] individual and aggregate damages can be calculated
    using available, objective information contained in AmFam's own electronic records,
21  combined with information on market clearing sales prices for damaged and repaired and
    undamaged vehicles."  *Id*. at 18.  Emphasis in original.
22
    [108] Pl's Mot at 19.
23
    [109] *See* the expert reports of Dr. Schink and Prof. Ratchford attached to the Bennett
24  Declaration as Exhibits 32 and 33.  Subject to that reservation, for purposes of this
    opposition, the defendants will treat Dr. Siskin's opinions as admissible.
25
    [110] *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184, 180 L.Ed.2d 24
26  (2011) (quoting Rule 23(b)(3)).

---

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S     Page 21
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

underlying purpose of UIM coverage is to give the insured the recovery he or she *would have been entitled to receive* if the uninsured or underinsured other driver had maintained an adequate policy of liability insurance.[111]

Disputes involving claims made under UIM coverage are a hybrid between a contract case and a tort case.  First, in order to recover for breach of contract under the UIM provisions, a plaintiff/insured is required to prove physical damage to a covered vehicle suffered in an accident governed by tort law principles, there must be proof of:  another driver's negligence caused an accident, a causal link from the accident to the insured's damages, and the nature, amount, and extent of those damages established in accordance with tort law principles.

Certification is not defeated solely by the requirement to engage in individualized damage calculations; however, Rule 23(b)(3)'s predominance requirement requires the moving party to show that damages are capable of measurement on a classwide basis."[112] Liability for damages for breach of contract is governed by different facts than those that can be said to be gleaned by the application of Dr. Siskin's regression formula.

In *Admasu v. Port of Seattle*, ___ P.3d ___, 2014 WL 5464888 (Wash. App. Div. 1, Oct. 27, 2014), the plaintiffs alleged that their property and thousands of others sustained diminished property values due to the Port of Seattle's operation of a runway.  The class plaintiffs argued common issues predominated because they offered expert opinions to demonstrate "a class-wide, aggregate diminution of property values resulting from airport

---

[111] "Therefore, . . . insureds may not recover UIM damages when their injuries were caused by an immune uninsured motorist.  See *Sayan v. United Servs. Auto. Ass'n,* 43 Wash. App. 148, 156–57, 716 P.2d 895 (1986).  "UIM insurers are allowed to assert liability defenses available to the tortfeasor because . . . the injured party is not entitled to be put in a better position by having been struck by an uninsured motorist as opposed to an insured motorist." *Dayton v. Farmers Ins. Group,* 124 Wash.2d 277, 281, 876 P.2d 896 (1994) *(dicta).*

[112] *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1433, 185 L.Ed.2d 515 (2013).

operations . . . which [could] then be apportioned to the individual properties.[113]  The Washington Court of Appeals held that "although the Port's general actions may be common to all, liability can likely be established only after examination of the circumstances surrounding each of the affected properties."[114]

Plaintiff Meyer has a burden of proof that the answers produced by Dr. Siskin's method or formula yields class-wide answers that establish the defendants' liability for breach of contract.[115]  That is a different proposition than simply multiplying Dr. Siskin's estimate of "Class wide damages" by "the [c]lass size by the average per claim loss in value," and then applying a discount for "the possibility" of prior damage "in the same spot." He arrives at percentage reductions in value in this "first step" for "the presence of frame/structural damage, and each area of damage ('hit').  Of particular interest to the issue of whether Meyer satisfies the predominance requirement is the so-called second step (which Dr. Siskin refers to as "modeling the class"), and "involve[s] applying the results of the regression analysis to a particular Class *via sampling of claims files* to determine the total Class wide damages through *aggregating the individual damages* of those in the sample, and

///

///

---

[113] *Id.* at 3.

[114] *Id.* at 2, 3; see also *Franklin v. Government Employees Ins. Co.*, 2011 WL 5166458, 8 (W.D. Wash., Oct. 31, 2011) (denying certification of a Washington-only, diminished value class where "each class member has presumptively made a claim on a unique vehicle that has been involved in a unique accident.  Even if the occurrence of irreparable physical damage was a common question among the class, this issue does not predominate over the individual extent of each class member's damage.")

[115] Dr. Siskin describes the second step in a May 16, 2013 Supplemental Disclosure made in one of the filings for *Moeller,* and attached as Exhibit B to his declaration, here.  It is worth noting here that the data relied upon by Dr. Siskin for the regression estimate, and the method of the regression, are unreliable and produce unreliable results.  *See* Bennett Dec., Exhibit 32 at 6-12 and Exhibit 33 at 7-11, for a summary of the issues with the regression analysis.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 23
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   *addressing any issues that might reduce damages in an individual case*, such as prior

2   overlapping damage."[116]

3           Dr. Siskin illustrates how he "models" the Class by referring to a supplemental

4   disclosure filed in *Janhunen v. Farmers Ins. Co* . that has been attached to his December 15,

5   2014 declaration.[117]   He calculated individual damages for three of Farmers' insureds based

6   upon "copies of the repair estimates," assessments of "the existence of frame/structural

7   damage" and the "number of spots . . . for each" vehicle.  The average of the "loss in value"

8   amounts in the sample is then subtracted from the "pre-loss valuations" of each of the

9   vehicles, and that figure is multiplied by the class size.

10          Dr. Siskin broadly states that "the formula used to determine those damages can be

11  applied on a [claim-by-claim basis] in a distribution phase if it is needed."[118]   Dr. Siskin

12  offers Plaintiff Meyer's vehicle as an illustration.  Again, he is given "NADA clean retail

13  value at the time of the accident," the conclusion that Plaintiff Meyer's vehicle "suffered

14  frame/structural damage," and that the vehicle had "eleven areas of damage."  Then, based

15  upon how one chooses to count the number of hits, Dr. Siskin offers *two different figures* for

16  Plaintiff Meyer's loss of value.[119]   The $385.15 difference represents a 7.2% disparity in

17  what Plaintiff Meyer claims he is entitled to recover – based solely on different counts of the

18  hits.  Those discrepancies are substantial when multiplied by the proposed class size.

19          Dr. Siskin rests his diminished value opinion regarding Plaintiff Meyer's Mustang (on

20  a count of 11 hits.  Mr. Harber counts 12 hits.[120]   When asked how "hits" were counted for

21  ─────────────

22  [116] Bennett Dec, Exhibit 26 at 2, ¶ 2.

23  [117] *Janhunen v. Farmers Ins. Co.*, Washington Superior Court (Pierce County) Case No. 99-2-07850-6; Bennett Dec, Exhibit 26 at 3, ¶ 5; 6-7. ¶¶ 15-19.

24  [118] Bennett Dec, Exhibit 26 at 4, ¶ 8.

25  [119] Bennett Dec, Exhibit 26 at 5, ¶ 12.

26  [120] Bennett Dec, Exhibit 9 at 7; 8:14-9:2; 10.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 24
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   purposes of Dr. Siskin's model, Plaintiff's DV expert, Mr. Harber,[121] explained that "it's

2   important to distinguish between the way I do it and the way that the damage model for this

3   class is set up. . . . I do it differently on an individual basis . . . ."[122]  Individual DV

4   assessments yield different amounts than the classwide assessment Meyer proposes here.[123]

5          Dr. Siskin's formula (and the class definition, here) also depends upon what he is told

6   about the presence of frame damage.   That can be a matter of disagreement.  The DV report

7   on Ms. Bower's Mini Cooper by former-plaintiff Jeff Butler observed "No frame/unibody

8   repairs or replacement listed."  Mr. Harber disagrees.[124]  So does Dr. Vogler, defendants'

9   automotive expert.[125]

10         Next, based upon his "visual inspection" of Plaintiff Meyer's Mustang, Mr. Harber

11   states that the vehicle "shows the areas of repair, and moreover shows that the vehicle has

12   suffered frame damage.[126]  Yet his inspection to determine DV apparently missed the

13   modifications Mr. Meyer and a friend made to the Mustang before the April 2014 damage.[127]

14         According to Mr. Harber, "a lot of people" customize their cars.  He only considers

15   manufacturers' options, because other modifications "make[ ] it very difficult because the

16   value that somebody else places on an upgrade may or may not be what the marketplace

17

18   _____

19   [121] *See* Bennett Dec, Exhibit 22 at 2:25-3:2.  Mr. Harber does "hundreds" of diminished
     value assessments in a given year.  Bennett Dec, Exhibit 9 at 20:12-21:19; 23:7-11, 21-25;
     24.

20

21   [122] Bennett Dec, Exhibit 9 at 4:24-5:7, 11-14; 6:22-25.

22   [123] Dr. Vogler addresses the uncertainty and questions of expert opinion in trying to apply
     Dr. Siskin's formula.  *See* Bennett Dec., Exhibit 31 at 5-9 (¶¶ 13, 17, 21-24).

23   [124] Bennett Dec, Exhibit 25 at 2; Bennett Dec, Exhibit 9 at 17:5-18:4; 19:12-14.

24   [125] Bennett Dec, Exhibit 31.

25   [126] Bennett Dec, Exhibit 22 at 4:5-6.

26   [127] "[T]hat's the first time I ever heard of that." Bennett Dec, Exhibit 9 at 12:3-8; 14:1-3.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

would value it."[128] An inspection would be needed to determine the DV loss "[i]f [customizing the vehicle] was something that [the owner] was doing himself, then I would think that it would be necessary, but when he's got receipts and they were done by a reputable business that does those type[s] of installations, then . . . I'm going to assume that everything is done properly and that it . . . adds to the value."[129]  On the other hand, while Dr. Siskin was willing to concede that "perhaps" modifications would affect valuations, no data was collected.  The impact of modifications is not addressed in his model because "you have to not only assume that it affects [the value], but you have to assume that it's related to *the likelihood of being in an accident* and having it fixed."[130]

Mr. Harber does not refer to Dr. Siskin's damage model when he makes a DV evaluation "on an individual basis"[131] because "before and after value is not a formula."[132] Under a breach of contract theory, Plaintiff Meyer is now claiming that the defendants are liable to pay him an uncertain additional amount (the alternative Dr. Siskin assessments minus what has been paid) while leaving behind a potentially far greater DV loss as found by Mr. Harber.  Plaintiff Meyer's two diminished value experts apply different methods and

///

///

---

[128] Bennett Dec, Exhibit 9 at 12:9-13:7, 17-23.

[129] Mr. Harber cited an example of where a "reputable dealer" installed a  $14,000 conversion kit and an $8,900 audio system at the time the vehicle was purchased, and Mr. Harber felt applying  "normal depreciation" to the cost of modifications would be a "reasonable method" of addressing the valuation issue.  Bennett Dec, Exhibit 9 at 14:11-15:15. "No responsive materials exist" was the response when Meyer was asked to produce records of "changes made to" the Mustang.  Bennett Dec, Exhibit 21 at 6-7, Nos. 36-37.

[130] Bennett Dec, Exhibit 27 at 8:18-10:14.  Emphasis supplied.

[131] In Mr. Harber's opinion, the Mustang sustained a $11,200 DV loss.  Bennett Dec, Exhibit 9 at 11:9-10, 20-25; 21:19-25; Exhibit 24 at 2.

[132] Bennett Dec, Exhibit 9 at 2:5-9, 13-20; 22:15-25; 26:3-21; 28:2-5.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   reach dramatically different opinions on the same question when considering individual

2   vehicles in the proposed class.[133]

3         Dr. Siskin offers his confidence that the necessary information "is available in a

4   computerized format from American Family and its estimating system Audatex" based upon

5   five pages of testimony from the deposition of Mr. Wade Nielson,[134] and Dr. Siskin's vague

6   statement that he has "knowledge from prior cases as to the availability of estimating

7   data."[135]   The breach of an alleged contractual obligation to pay under the UIM coverage

8   requires a determination of the DV amount of loss the plaintiff would be entitled to recover

9   from a tortfeasor (with the identified tortfeasor made a party to the lawsuit and bound by it)

10  less any amounts already paid by the tortfeasor,[136] any amounts already paid by the UIM

11  insurer,[137] the percentage of fault allocated to the insured, the appropriate deductible,[138]

---

[133] Mr. Harber's $11,200 assessment of Plaintiff Meyer's Mustang diminished value loss is nearly double $5,473.21 (95.57%) or more than double, $5,858.39 (109.67%) the results of applying Dr. Siskin's formula.

[134] Repair estimates, amounts actually paid for repairs, even the deductibles applied, is available in the individual claim files.  Bennett Dec, Exhibit 3 at 21:23-25; 22:20-23:6. However, DV payments are not separately stated, nor are they readily ascertainable without reviewing all of the notes in each claim file.  Bennett Dec, Exhibit 10 at 15:21-16:13; Exhibit 28 at 1.

[135] Bennett Dec, Exhibit 26 at 4, ¶ 8.

[136] "UIM coverage applies when the sum of the limits of applicable property damage liability policies is less than the damage which the covered person is entitled to recover from the tortfeasor."  *Dehaan v. Farmers Ins. Co. of Washington*, 172 Wash. App. 1047, 2013 WL 223514, 3 (Wash. App., Div. 1 Jan. 22, 2013) "Even though [the auto insurer] may not have included an amount specifically for diminished value in its payment of a claim, it is conceivable that the amount it paid a particular insured may, in fact, have exceeded the total amount (including diminished value) that [the] insured could have recovered from the third party tortfeasor."  *Government Employees Ins. Co. v. Bloodworth*, *supra*, 2007 WL 1966022 at 48.

[137] *See* Bennett Dec, Exhibit 27 at 3:2-20; 7:3-21. "Even if the plaintiff were able to show that classwide proof of eligibility for an award of diminished value, the fact that all vehicles described in the class definition suffered a decrease in value does not necessarily prove that GEICO failed to pay any particular insured less than he or she was entitled to from the uninsured motorist."  Paying the cost to repair the insureds' vehicles does not waive the differences in the allocation of fault attributable to the insureds in a proposed class, or make those differences irrelevant.  *Bloodworth, supra,* 2007 WL 1966022 at 47.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL
   Page 27

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

considering contractual "other insurance" provisions,[139] and subject to the contractual limit of liability for the UIM coverage.  Plaintiff Meyer fails to show that common answers to the issues he identifies as predominant will fairly be reached by applying a regression analysis that does not account for these procedural and damage issues.

As the party moving for class certification, Plaintiff Meyer also has the burden of proving that proceeding as a class is a superior way to determine if members of the class are entitled to money damages.  In some cases, the amounts at issue are relatively small and aggregating the claims is seen as necessary to motivate an individual plaintiff to pursue a remedy.  Here, the disputed amounts range from $5,400 to more than $11,000.[140]

Courts applying Washington law "distinguish between diminished value loss (irreparable physical damage) and stigma damages (intangible taint) . . . , but [do] so with the understanding that the definition of diminished value loss requires *demonstrable* physical damage."[141]  Plaintiff Meyer denies he is seeking stigma damages.  However, before reaching the issue of whether Plaintiff Meyer is entitled to payment of any amount above the amount AFM has paid, that disclaimer of stigma damage is illusory unless Plaintiff Meyer carries his burden to prove the existence of physical damage remaining after the repairs,[142]

---

[138] The damage sustained must exceed the applicable deductible before there is contractual liability to pay.  Dr. Siskin's model does not account for the deductible or allocation of fault.  Bennett Dec, Exhibit 27 at 3:2-20; 4:6-5:14.  Within the UIM PD coverage, there are differences in the applicable deductibles.  Bennett Dec, Exhibit 5 at 7, ¶ D, sub¶¶ 3, 4.

[139] Where members of the purported class may have had other insurance available or who had accidents with an underinsured driver the "other insurance" provision of the policy would affect whether and what amounts were owed.  Bennett Dec, Exhibit 5 at 8 ¶ F, sub¶ 1.

[140] In Mr. Harber's experience, those amounts in dispute have been sufficient to prompt individuals to litigate.  Bennett Dec, Exhibit 9 at 25:8-13.

[141] *Mansker v. Farmers Ins. Co. of Washington*, 2010 WL 3699856, 7 (W.D. Wash., Sept. 14, 2010) (not reported)

[142] *Degenhart v. AIU Holdings, Inc.*, *supra*, 2010 WL 4852200 at 5.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 28
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

1   and to distinguish the alleged diminished value damages from stigma damages[143] as well as

2   the damages left unrepaired or that were improperly repaired.[144]

3   The UIM endorsement provides that "[i]f **we** and an **insured person** do not agree

4   whether that **insured person** is legally entitled to recover damages, or as to the amount of

5   damages which are recoverable by the **insured person** from the owner or operator [of] an

6   **underinsured motor vehicle**, then the matter may be arbitrated."[145]  Apparently, for

7   strategic reasons related to advancing the motion to certify or only to enhance his recovery,

8   Plaintiff Meyer concluded the method provided in his insurance contract to address disputed

9   claims under the UIM PD coverage was superior – if allowed to divide his claimed damages.

10   Save the statement that "the claims handling practices that Plaintiff challenges are

11   uniformly implemented,"[146] Plaintiff Meyer does not attempt to demonstrate proceeding as a

12   class is a superior means to litigate the elements of a CPA violation.[147]  AFM does not

13   inform its insureds of the potential for a DV claim and believes it has no obligation to do

14   so.[148]  AFM is not required to presume DV occurred in every accident or that the insured

15

16

---

17   [143] "[T]he definition of diminished value in Washington does not include stigma damage . . . ."  *Id.*

18

19   [144] "The prevalence of individual issues" in the *Admasu* decision denying that a class was a
20   superior means to adjudicate those DV claims was underscored "when one of the plaintiffs'
     experts suggested appraisals might be utilized as part of the class action proceeding.  This
     raised the specter of hundreds or thousands of appraisals that would be conducted."  *Admasu,*
21   *supra,* 2014 WL 5464888 at 4, n. 24.

22   [145] Bennett Dec, Exhibit 5 at 8, ¶ F, sub ¶ 2.

23   [146] Pl's Mot at 15.

24   [147] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784-85,
     719 P.2d 531 (1986); see also *Reed v. Whitacre*, 147 Wash. App. 1007, 2008 WL 4635914, 3
25   (Wash. App. Div. 2, Oct. 21, 2008) (reversing trial court's denial of the insurance company's
     motion for summary judgment against the plaintiff's CPA claim in a DV claim).

26   [148] Bennett Dec, Exhibit 30 at 2.

---

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

intends to make a claim.[149]   An insurance company does not "misrepresent" or "conceal" the terms or benefits of the UIM coverage or violate claims handling regulations by not informing a policyholder of all types of loss that could be claimed under a particular coverage.[150]  Also, many insureds know they can present such a claim.  Some choose to make a claim, and some choose not to make a claim.  A class action is not a superior means to litigate facts regarding misrepresentation, causation and injury and allegations that the defendants' conduct violated duties owed under claims handling regulations.

## VI.  <u>PLAINTIFF'S MOTION SHOULD BE DENIED</u>

Instead of outlining a plan that would allow this Court to weigh whether liability for breach of contract damages can be fairly determined on a class-wide basis, Plaintiff Meyer proposes to arrive at an amount each class member is "entitled to receive" based upon a comparison between a class wide estimate of damages (an "average per claim loss" taken from a decade old database) and an average payment amount he proposes to cull from a sample of AFM claim files regarding separate accidents, and separate vehicles where

- DV payments may have been made after the AFM property damage adjusters exercised their judgment and discretion, and weighed any number types of information, including comparative fault; or

- a claim was made, but no diminished value was found to exist; or

- a claim was made, but no payment was made, and the disputed decision was resolved in a compromise; or

---

[149] The insured is required to establish the existence of actual physical damage.  *Degenhart v. AIU Holdings, Inc.*, *supra*, 2010 WL 4852200 at 5. "[T]here is no presumption of inherent diminution of value in automobile tort cases . . . ."  *Defraites v. State Farm Mut. Auto. Ins. Co.*, 864 So.2d 254, 261 (La. App. 5th Cir., 2004).

[150] *Tavakoli v. Allstate Property and Cas. Ins. Co.*, 2012 WL 6677766 (W.D. Wash., Dec. 21, 2012); see also *Defraites*, *supra*, 864 So.2d at 261 ("[The Louisiana insurance claims handling statute] requires the insurer to initiate loss adjustment of a property damage claim within a specified period of time, but there is nothing in this statute which requires the insurer to make an offer for an item of damages which is neither claimed nor factually supported based on the evidence.")

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 30
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

- a claim was made, but no payment was made, and the disputed decision was resolved after an arbitration, or

- no claim was made because a policyholder decided that he or she was satisfied with the repairs and chose not to make a DV claim, or

- no claim was made where (unlike Plaintiff Meyer and Christina Bower) the policyholder did not know about diminished value and would have made a claim.

FRCP 23's standards have not been met.  These numerous and disparate claims issues cannot be fairly tried in the aggregate.  Plaintiff Meyer's motion to certify should be denied.

DATED:  February 27, 2015

BULLIVANT HOUSER BAILEY PC

By /s/ John A. Bennett
    John A. Bennett, WSBA #33214
    E-mail:  john.bennett@bullivant.com

Attorneys for Defendants American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S   Page 31
MOTION FOR CLASS CERTIFICATION
No. 3:14-cv-05305 RBL

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** was served upon:

| | | |
|---|---|---|
| Stephen M. Hansen<br>Law Offices of Stephen M. Hansen, P.S.<br>1821 Dock St., Ste. 103<br>Tacoma, WA  98402 | ☒ | via ECF filing |
| Debra Brewer Hayes<br>The Hayes Law Firm<br>700 Rockmead, Ste. 210<br>Kingwood, TX  77339 | ☒ | via ECF filing |
| Scott P. Nealey<br>Law Office of Scott P. Nealey<br>71 Stevenson St., Ste. 400<br>San Francisco CA  94105 | ☒ | via ECF filing |

I declare under penalty of perjury under the laws of the United States on this 27th day of February, 2015, at Portland, Oregon.

*/s/   John A. Bennett*
John A. Bennett, WSBA #33214

15214575.2

CERTIFICATE OF SERVICE
No. 3:14-cv-05305 RBL

Page 1

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930